Patrick R. McCOY, Appellant
(Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 93–273.

Supreme Court of Wyoming.

Nov. 30, 1994.

Rehearing Denied Dec. 21, 1994.

Nicholas H. Carter, Gillette, for appellant.

Joseph B. Meyer, Atty. Gen., Sylvia L. Hackl, Deputy Atty. Gen., D. Michael Pauling, Sr. Asst. Atty. Gen., Cheyenne, Prosecution Assistance Program, Theodore E. Lauer, Director, Gayle E. Blakeley, Student Intern, Laramie, for appellee.

Before GOLDEN, C.J., and THOMAS, CARDINE,* MACY,** and TAYLOR, JJ.

GOLDEN, Justice.

In this case we determine whether appellant's jury conviction and sentences for three counts of second-degree sexual assault and one count of indecent liberties with a minor require reversal because trial counsel's decisions concerning expert testimony violated his right to effective assistance of counsel. For the reasons explained below, we hold that reversal is not required.

### ISSUES

McCoy states the issues as:
ISSUE # 1:

Whether Trial Counsel failed to render effective assistance of counsel as guaranteed by the Constitution because of his following errors:

1. A failure to properly file a motion with the District Court for the payment of necessary costs for expert witnesses when trial counsel was aware that the Appellant had no funds for costs and the need for an expert was evident.

2. His failure to properly investigate the possible use of an independent expert witness when he was aware that the prosecution intended to use expert testimony at trial.

3. His failure to request a continuance two weeks before trial to obtain an independent analysis of the report from the State's expert witness that he had just received.

* Retired July 6, 1994.

4. His failure to call a witness whose testimony would have directly contradicted that of the alleged victim.

ISSUE # 2:

Whether it is reasonably probable that but for Trial Counsel's deficient performance the trial result would have been different.

The state presents the issues as:

Did Appellant's trial counsel provide him with effective assistance despite counsel's alleged failure:

(A) To seek funds from the court to provide expert witnesses for Appellant;

(B) To investigate Appellant's case properly;

(C) To request a continuance of the trial; or

(D) To call Angela Karsky as a witness at the trial;

And did those alleged acts or omissions create a reasonable probability that, in their absence, the result of the trial would have been more favorable to Appellant?

### FACTS

The charges against appellant Patrick R. McCoy followed his separation from his wife, Raylene, in July of 1992. Raylene, a devout Jehovah's Witness, took the couple's daughter to a "touch therapist" connected with the Jehovah Witness church. The therapist evaluated the daughter for sexual abuse by touching her in various places on her body. The daughter later told her mother that her father had touched her sexually when she was four years old.

Raylene then took the daughter to Dr. William Heineke, a counselor at Wyoming Regional Counseling Center in Gillette, Wyoming. After several sessions, he reported to the state that the daughter had been a victim of sexual abuse, and the Gillette police began an investigation. Shortly after learning of the allegations, McCoy secured legal representation and filed for divorce and child custody. He later alerted his counsel to the sexual abuse allegations.

** Chief Justice at time of oral argument.

Two physical examinations of the daughter were conducted which arguably were inconclusive. In March of 1993, the police scheduled an interview with her. The evening before, the mother had her watch a video concerning a daughter's accusation against her father for child sexual molestation. The next day, the daughter told police investigators that in addition to the touching episode when she was four, her father had sexual vaginal intercourse with her three different times when she was six years, eight years, and ten years old. She also stated that her father had anally penetrated her during the episode when she was ten years old. This assault caused her to bleed, and she told her mother of the bleeding. Her mother testified that she remembered the incident because her daughter cried over what the mother believed was menstruation. This caused the mother to consult the school nurse to receive literature and advice for the daughter. The school nurse testified and confirmed that the mother had contacted her four years ago for the literature and advice. Both the mother and daughter testified that the daughter, now age 12, has not menstruated.

Following the daughter's police interview, charges were filed against McCoy. A third physical examination of the daughter was conducted by Dr. Susan Reichert of Children's Hospital in Denver, a pediatrician and member of the hospital's Child's Advocacy and Protection team. Dr. Reichert testified at trial that the results of her physical examination caused her to conclude the physical evidence showed repeated sexual intercourse over a long period of time and past sexual abuse. Dr. Heineke testified that in his opinion the daughter had been sexually abused. The state also presented testimony from the mother, daughter, and police investigator, Shane Shaw.

As its strategy, defense relied upon cross-examination of state witnesses to point the finger at another possible perpetrator and also to establish that the daughter's accusation against her father arose from anger at her father over the divorce. The defense contended that this anger, maternal coaching, and suggestive therapy made her vulnerable to the suggestion that her father had sexually abused her.

McCoy testified, denying that he had sexually assaulted his daughter. He claimed that his wife had coached his daughter to make the charges against him because the couple was engaged in a divorce and a custody dispute over the daughter. The defense called no other witnesses.

Following the jury's conviction, McCoy's trial counsel filed a motion for judgment of acquittal and/or a new trial, alleging insufficiency of the evidence. Before the hearing, trial counsel withdrew and was replaced. New defense counsel supplemented the motion alleging ineffective assistance of counsel and an evidentiary hearing was held.

After hearing testimony, the trial court denied the motions for a judgment of acquittal and for a new trial. This appeal followed.

## DISCUSSION

STANDARD OF REVIEW

■ To establish that he has been denied effective assistance of counsel, a defendant is required to show that counsel's performance was deficient and that, but for this deficient performance, it is reasonably probable that the trial result would have been different. *Frias v. State*, 722 P.2d 135 (Wyo.1986) (*citing Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

In *Gist v. State*, 737 P.2d 336 (Wyo.1987), we noted:

'[T]here are countless ways to provide effective assistance in any given case,' *Strickland* [466 U.S.] at 689, 104 S.Ct. [at] 2065, unless consideration is given to counsel's overall performance, before and at trial, it will be 'all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.' *Strickland* [466 U.S.] at 689, 104 S.Ct. [at] 2065.

*Gist* at 343 (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 386, 106 S.Ct. 2574, 2589, 91 L.Ed.2d 305 (1986)).

We said in *Gist* that this court does not evaluate the identified actions or omissions of

counsel in hindsight but in light of all the circumstances; strongly presumes that counsel rendered adequate and reasonable assistance making all decisions within the bounds of reasonable professional judgment; and views each case in the total context of the representation afforded to determine if the defendant was denied his right to a fair trial. *Gist,* 737 P.2d at 342.

### FAILURE TO INVESTIGATE

McCoy contends on appeal that his trial counsel's performance was so deficient the adversarial process "broke down in this case." McCoy lists counsel's errors as:

1) failing to file a motion for the payment of costs for the retention and aid of expert witnesses,

2) failing to reasonably investigate the possible use or necessity of expert witnesses,

3) failing to make a motion to continue in order to properly investigate reports that he received from the prosecution close to the date of trial,

4) failing to call a witness whose testimony would have directly refuted the testimony of the alleged victim.

McCoy's first two listed errors are a contention that trial counsel failed to reasonably investigate the availability and necessity of expert testimony. This court has previously adopted the following with respect to the duty to investigate:

[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, *counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.*

The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. * * * [W]hat investigation decisions are

reasonable depends critically on such information. (Emphasis added).

*Frias v. State,* 722 P.2d at 145 (quoting *Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066, 80 L.Ed.2d at 692).

McCoy, in his appellate brief, contends that trial counsel had reason to know that McCoy lacked funds for the necessary expense of investigation and expert witnesses and should have acted in one of three ways:

1) Filed a motion with the District Court pursuant to WYO.STAT. § 7–6–104 for the payment of costs necessary to obtain an expert to determine whether the appellant was a "needy person,"

2) withdrawn as counsel for the Appellant and referred him to the public defender's office since the Appellant could not afford to pay trial counsel's fee and for needed expert witnesses, or

3) paid for expert witnesses out of his fee.

McCoy relies upon *People v. Danley,* 758 P.2d 686 (Colo.App.1988) for authority that this failure is ineffective assistance of counsel. However, we do not read *Danley* as characterizing this particular omission by trial counsel to be ineffective assistance of counsel *per se.*

*Danley* was charged with attempting to sell unneeded heating equipment to others following a "sting operation" engineered by the state. Danley paid his counsel a substantial fee believing the fee would include all investigation and witness fees. When he learned these expenses were not included, Danley made statements which caused his counsel to fail to make any inquiry respecting the availability or cost of securing favorable expert testimony. Even after it came to the attention of counsel that an expert had reported that one of the furnaces involved was defective, Danley's counsel failed to determine whether Danley would be prepared to pay for the cost of that expert's testimony.

This failure was prejudicial because the basic issue in the case was whether Danley had misrepresented whether the furnace was defective and expert testimony was available that the furnace involved in the "sting operation" was defective. In a similar case involving an identical charge and the same furnace,

the defense presented such expert testimony, and a verdict of not guilty was returned. Based on these facts, the court determined that counsel's representation of Danley made it reasonably probable that, but for his ineffective assistance, the outcome of Danley's trial would have been different. *Danley*, 758 P.2d at 688.

Danley's conviction was reversed because the availability and necessity of the expert testimony were specifically shown *and* because of the prejudice to him. Prejudice is the second component of the *Strickland* test. If deficient performance did not prejudice the defendant, a conviction will not be reversed.

 We agree with McCoy that trial counsel's duty to investigate included acting upon information that his client had become indigent and could not afford the necessary expenses of the trial. If trial counsel actually knew or had reason to believe his client was indigent, it is deficient performance not to investigate the options available to the client under Wyo.Stat. § 7–6–104 (1987). An attorney is presumed to know the applicable law. However, McCoy's claim that this omission is ineffective assistance of counsel burdens him with making the specific showing that he was indigent. The showing requires factual evidence of indigency. It is insufficient to prove deficient performance by conclusory statements that appellant is indigent which are unsupported by facts. McCoy has only told us he is indigent without supplying any factual support. He has not met his burden of showing deficient performance.

 At the post-trial hearing, trial counsel testified that he did not consult with any psychologists or counselors in an attempt to counter the state's expert testimony. McCoy contends this omission is a complete failure to properly investigate because child sexual abuse cases are so highly technical and there exist such wide ranging schools of thought concerning the evaluation, investigation, and determination of child sexual abuse, that it is vital to retain expert consultation to determine whether the state's experts' methods were appropriate. McCoy then again argues that this omission was ineffective assistance of counsel *per se*.

However, the omission is only ineffective assistance of counsel if McCoy has met his burden of showing that this omission amounted to deficient performance and he was prejudiced. As in *Danley*, McCoy's proof of deficient performance must specifically show the availability and necessity of such expert testimony. McCoy admits that he does not make this showing of specific facts when he states "it is left unknown without this consultation as to whether the methods that were used by the state's experts were appropriate or even possibly detrimental to the alleged victim in this case."

### Deficient Performance

In effect, McCoy has argued without factual support that there was only one plausible line of defense, expert testimony. Applying our standard of reviewing counsel's overall performance to determine if McCoy was deprived of a fair trial whose result is reliable, we have carefully reviewed the record, and we find that it does not support McCoy's contention.

The record shows that until trial counsel was given the physical evidence report from Dr. Reichert, the planned defense strategy was to discredit the other two physical evidence reports as inconclusive, and argue the daughter's allegations resulted from maternal coaching devised as a ploy in the couple's custody battle over the daughter.

After receipt of Dr. Reichert's report, the defense counsel consulted with a local gynecologist, Dr. Leonel Zolessi, to determine if that defense strategy could still be plausible. In Dr. Zolessi's opinion, parts of the report which concluded that the presence of scar tissue and cysts indicated sexual abuse could be attacked upon cross-examination to force an admission that actually they were inconclusive as to *abuse*. However, it was his opinion that the reported condition of the hymen clearly indicated repeated sexual intercourse and that was a correct conclusion.

At the post-trial hearing, McCoy produced testimony from an expert witness who challenged the investigation and protocol methods employed in preparing Dr. Reichert's physical evidence report. However, the state

elicited testimony from the defense's expert which discredited his own assertions that proper investigation and scientific protocol had not been followed in preparing the physical evidence report. In essence, it was discovered during the expert's testimony that he had misunderstood the report.

Trial counsel testified at the post-trial hearing that Dr. Zolessi's information clarified that the physical evidence could not be attacked to cast doubt on whether sexual penetration had actually occurred, but established that the basic issue involved at trial would be whether it was the defendant who was responsible for the sexual intercourse. The defense strategy anticipated that the only direct evidence of the perpetrator would be the daughter's accusation, meaning it would be defendant's word against the daughter's. The defense developed and executed a cross-examination strategy which produced testimony from the daughter and McCoy's ex-wife that the daughter first told of sexual abuse following a counseling session with the "Jehovah's Witness touch therapist." Cross-examination also revealed that the daughter told of the sexual assaults following months of counseling by Dr. Heineke of the Wyoming Regional Counseling Center, and just one day after watching a suggestive movie. The defense elicited admissions from Raylene and the daughter that at one time the daughter had accused her now 22–year old brother of perpetrating the sexual abuse.

*Prejudice*

At the post-trial hearing, McCoy contended that if the basic issue was "who had done it," it was critical that he explain why his daughter was accusing him of the sexual abuse. McCoy attacked the cross-examination strategy as insufficient, arguing it was ineffective assistance of counsel to not have testimony from a defense expert in a variety of areas. Now on appeal, McCoy focuses on testimony produced from the state's expert witness that parental coaching is called "parental alienation syndrome" and argues it was ineffective assistance of counsel not to produce an expert regarding "parental alienation syndrome."

The "parental alienation syndrome" was explained by the state's expert as sexual abuse allegations against one parent as a result of coaching and encouragement by the other parent. Based upon his counseling sessions with the daughter, the state's expert discredited the notion that the charges were fabricated or the result of coaching. McCoy made no showing against this conclusion and, as noted earlier, still has not made the requisite specific showing that expert testimony was available to show this conclusion is incorrect.

We agree with the trial court's conclusion that demonstrating both coaching and anger was employed as the defense strategy at trial, and that evidence was placed before the jury through cross-examination and emphasized during the closing argument by defense. Appellant has not demonstrated ineffective assistance of counsel, just an unsuccessful defense strategy and is speculating that testimony from an expert would have been a more advantageous strategy.

OTHER WITNESSES

■ McCoy also contended that witnesses were not called to testify at trial concerning other crucial evidence including a prior inconsistent statement by the daughter, statements made during a police interview with McCoy, and McCoy's character. In support, McCoy produced testimony which indicated a physician's assistant could have disclosed a prior inconsistent statement where the daughter denied her father assaulted her; McCoy's son could have revealed police investigator statements promising to clear McCoy if he would admit to the assaults and threatening that police would coach the daughter if he did not so admit; and McCoy's employer could have stated that McCoy's job as an electrician for the school district frequently placed him in contact with young girls and no complaints had been received concerning his conduct.

The state showed, however, that the physician's assistant had conducted a physical examination of the daughter, and her complete testimony would have been that her examination did not confirm the daughter's denial because her examination indicated penetration other than digital penetration. The

state also elicited testimony from Shane Shaw, another police investigator present during the interview with McCoy, who denied that the other officer had made promises to McCoy, and indicated that the assertions were based upon statements out of context.

There was no error involved in McCoy's final two contentions since the facts indicate that trial counsel did obtain an independent analysis of the report involved. Further, it appears to have been trial strategy to avoid the damaging cross-examination testimony which the state would have elicited from the physician's assistant had she testified. There was no deficiency and no prejudice.

## CONCLUSION

Appellant has not met his burden that counsel's omissions in performance constituted ineffective assistance of counsel.

Affirmed.

TAYLOR, J., filed a dissenting opinion in which CARDINE, J., joined.

TAYLOR, Justice, dissenting, with whom CARDINE, Justice, Retired, joins.

I respectfully dissent.

Several months before sexual assault charges were filed against Patrick R. McCoy (McCoy), he and his wife were involved in a bitter divorce and custody battle which involved the victim. During the pendency of the divorce and custody proceeding, McCoy's wife took their daughter to a "touch therapist" associated with the Jehovah Witness church who offered the opinion that the daughter had been sexually abused. Shortly before a scheduled police interview regarding the alleged sexual assault, the victim watched a movie depicting sexual child abuse. The following day, the victim stated to police investigators that McCoy had sexually abused her. Charges were filed against McCoy and a jury trial was held.

Defense counsel was advised during pretrial proceedings that the State would call a number of witnesses, two of which were experts in the field of psychology. Defense counsel listed McCoy as his only witness. Defense counsel's preparation of this case consisted of a few telephone conferences with his client and two or three office consultations. Relying upon his own knowledge of psychology obtained during undergraduate work in college and one brief conversation with a gynecologist, defense counsel sought no expert assistance in preparing McCoy's defense. Defense counsel relied upon maternal coaching, recognized in psychology as "parental alienation syndrome," as the cornerstone of his defense.

Defense counsel failed to call as a witness the counselor who was the first professional to interview the alleged victim concerning the allegations of sexual abuse. Had the counselor been called as a witness, her testimony would have revealed that the alleged victim's testimony at trial was inconsistent with and far more incriminating than what was originally related to the counselor. Defense counsel was remiss in not calling this witness whose testimony would have directly contradicted that of the alleged victim.

Defense counsel utterly failed to investigate and evaluate McCoy's case. Defense counsel declined to consult with any expert witness or seek professional assistance in evaluating the State's expert witnesses. Defense counsel also failed to call any witness other than McCoy, whose fate was a foregone conclusion in the face of the case presented unopposed by the State. Defense counsel accepted a substantial retainer, and then rested without calling any witnesses in support of his theory.

I would reverse and remand based on ineffective assistance of counsel.