2004 WY 28

**John K. LOPEZ, Appellant (Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

**No. 01–110.**

Supreme Court of Wyoming.

March 24, 2004.

---

Representing Appellant: Thomas Sedar,* Casper, Wyoming; Kenneth Koski, State Public Defender; Donna D. Domonkos, Appellate Counsel; Marion Yoder, Senior Assistant Public Defender, Cheyenne, Wyoming. Argument by Ms. Yoder.

Representing Appellee: Hoke MacMillan, Wyoming Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General, Cheyenne, Wyoming. Argument by Mr. Pauling.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

* Order granting Motion to Dismiss Appellate      Counsel filed February 26, 2002.

GOLDEN, Justice.

[¶ 1]   In this case, we must primarily decide whether the State proved that Appellant John Kenneth Lopez (Lopez) committed second degree murder by a single, open hand slap to the side of the victim's head.   The victim walked away after the slap, but, hours later, was found unconscious, and he subsequently died.   Following a jury trial, Lopez was convicted of second degree murder and sentenced to twenty to forty years.   On appeal, retained trial counsel submitted issues alleging various trial errors and constitutional violations, one of which alleges that his own performance regarding jury instructions had been ineffective and deprived Lopez of his constitutional right to effective assistance of counsel.   Retained counsel later withdrew, and the Public Defender was appointed. That appellate counsel submitted a supplemental brief raising other ineffectiveness-of-counsel issues primarily concerning trial defense counsel's failure to secure a defense expert to challenge the coroner's opinion of the cause of death.   This Court remanded for an evidentiary hearing on this issue. At that hearing, a defense expert testified that the coroner had incorrectly determined the cause of death; however, the trial court ruled that counsel had been effective, and a second supplemental brief was submitted on appeal to challenge this decision.

[¶ 2]   As explained below, this Court holds that the State did not prove beyond a reasonable doubt that Lopez killed maliciously, his conviction for second degree murder is reversed, and retrial on that charge is barred. This Court also holds that defense counsel provided ineffective assistance of counsel to Lopez when defense counsel failed to have expert testimony on the issue of causation at trial.   This case is therefore remanded to the district court for a new trial on voluntary manslaughter.   Further, the State is ordered to provide all tissue slides if so requested by the defense or, alternatively, the defense may choose instead to rely upon the present version of its defense expert's report and testimony which shall be admissible at a new trial.

## ISSUES

[¶ 3]   From his three briefings, Lopez presents the following statement of the issues:

1.   Did the court's refusal to give defendant's requested self defense jury instruction on actual danger WPJIC 8.11 (1978) constitute reversible error?

2.   [Was it reversible error for the court] to give instruction # 14 on duty to retreat?

3.   Did the court's failure to give a jury instruction defining the term "deadly force" under Wyoming law constitute reversible error?

4.   Did the court's failure to give the standard self defense instruction create reversible error?

5.   Was the counsel for the defendant ineffective?

6.   Did the prosecutor misstate the law in closing [argument] when he argued that to convict the defendant the jury must only find that the defendant struck [the victim] in anger?

7.   Did the prosecutor's statements during closing [argument] when considered in their entirety constitute plain error?

8.   Was there sufficient evidence to convict the defendant?

9.   Were the defendant's rights to due process and a fair trial prejudiced by the coroner's intentional destruction of [the victim's] body?

10.   Whether appellant's uncounseled statements to police should have been suppressed?

11.   Whether counsel's errors, and in particular his failure to present conflicting expert testimony, rendered his assistance ineffective?

12.   Whether each element of the crime charged was properly established?

13.   Whether trial counsel's assistance was rendered ineffective in light of inherent conflicts of interest obviating the need to prove prejudice or, in the alternative, whether counsel's errors produced a trial

with an unreliable result and thus prejudiced his client?

The State rephrases the issues as:

I.  Did the district court err in instructing the jury as it did, and was defense counsel ineffective in not requesting or failing to object to certain instructions?

II.  Was the prosecutor guilty of misconduct in his closing argument?

III.  Was the evidence sufficient to support appellant's conviction?

IV.  Did the coroner's release of the victim's body deprive appellant of his right to a fair trial?

V.  Did the district court properly deny appellant's motion to dismiss?

VI.  Did trial counsel's failure to procure expert witness testimony constitute ineffective assistance?

## FACTS

[¶ 4]  After getting off work, Lopez began drinking heavily at the Albuquerque Apartments in Casper with a number of friends sometime after 3:00 a.m. on the morning of December 18, 1999.  Lopez and the victim, Robert Herman, were good friends, and Lopez was aware that Herman suffered from chronic alcoholism.  According to defense theory, Lopez became upset that Herman was drinking whiskey and told him to stop drinking before he killed himself.  Herman pushed Lopez, and Lopez slapped Herman on his head with an open hand and pushed him back down onto a couch.  Which hand Lopez used to strike Herman was hotly disputed at trial, and witnesses' testimony about which hand was used was conflicting.

[¶ 5]  The slap was inflicted about 11:00 a.m. on December 18, 1999.  After receiving the slap, Herman went to the post office with a friend, but complained of a headache and returned to his apartment at about 12:30 p.m.  Herman's girlfriend and at least one friend entered the apartment through an open backdoor during the afternoon.  Late that evening, Herman had locked all doors, and his friends tried to rouse him to answer either the telephone or the door but were unable to do so.  By 9:00 p.m., the friends were sufficiently worried to break into the apartment.  They found Herman, face down on the floor by his bed, unconscious, and bleeding from the nose and mouth.

[¶ 6]  Herman was rushed to the hospital but died the next evening, December 19, at about 9:30 p.m., almost thirty-four hours after Lopez struck him.  After emergency room medical staff observed trauma to the left side of Herman's head, the police were notified and began an investigation about midnight on the 19th.  Police investigators learned of an altercation, and an eyewitness testified that Lopez had struck Herman once with his open left hand on the right side of Herman's head earlier that morning.  Another witness testified that he heard a smacking sound and then saw Herman falling back onto the couch and Lopez had his left hand up.  The witness assumed that Lopez had "open-handed" Herman to the "right side of the head."  Police encountered Lopez at Herman's apartment complex, and Lopez admitted striking Herman during an argument.  Police then asked Lopez to go to the police station for an interview.  During a recorded portion of the police interview, Lopez admitted to delivering a stiff arm to Herman's face.  Police officer Malone testified that, during an unrecorded portion of the police interview, Lopez admitted to hitting Herman once on the right side of his face; however, Lopez demonstrated how he hit Herman and, during that demonstration, Lopez indicated that he had struck Herman once with his right stiff arm to the left side of Herman's face.  Lopez' motion to suppress his statements to police was denied.

[¶ 7]  The same night that police were receiving statements from Lopez and witnesses that Lopez had struck Herman hours earlier, evidence technicians notified police investigators that Herman had marks on his body that appeared to be boot marks; however, police uncovered no evidence that Lopez had kicked Herman.  Dr. Thorpen, the coroner, prepared an autopsy report stating that Herman died from "assaultive trauma to head" that was caused after "subject struck on head by hand of known assailant."  The autopsy was conducted on December 21, 1999, two days after death and after police had interviewed Lopez.  Dr. Thorpen testified that Lopez

was the "known assailant" listed as the cause of death and also testified that his conclusions as to how the death had occurred were based on police reports. Lopez was charged with second degree murder on January 3, 2000, and arrested the next day.

[¶ 8]  At trial, Dr. Thorpen testified as the State's last witness. He testified that the cause of death was a blood clot on the right side of the brain that resulted from a blow administered to the left temple.[1]  Dr. Thorpen stated that Herman had numerous health problems that made him susceptible to death by the slap and had previously been treated for dilated veins caused by chronic alcoholism and a previous head injury. Dr. Thorpen conceded that Herman was found on the floor, had a blood alcohol content of .215, and had veins so fragile they could easily rupture from sudden movement. However, Dr. Thorpen would not concede that it was possible that a fall had caused Herman's fatal injury because Herman had been found on a padded carpeted surface.

[¶ 9]  No evidence at trial indicated that Lopez was aware that Herman possessed these physical weaknesses. Lopez contended that he had pushed Herman in self-defense and the slap was not the fatal blow. Lopez also contended that, between the time that he struck Herman and the death hours later, the fatal blow was caused by an intruder/robber who kicked him with boots. Lopez contended that some of Herman's possessions were missing. In both opening statement and closing argument, the State conceded that Lopez had no intent to kill Herman by slapping him but, by striking the single blow in anger, had committed second degree murder. The verdict form included a charge of voluntary manslaughter.

[¶ 10]  Defense counsel had requested that the public defender pay for an expert but, before trial, had withdrawn the motion to further research the law, did not renew the motion, and, ultimately, no defense expert testified. Lopez was convicted of second degree murder, his motion for new trial was denied, and his appeal followed. After

the public defender was substituted for retained counsel on appeal, it was contended that trial defense counsel had been ineffective for failing to present expert testimony on the issue of causation. This Court granted a partial remand for an evidentiary hearing on the issue of ineffective assistance of trial counsel.

[¶ 11]  At that hearing, Lopez presented an expert witness, Dr. Larkin, a forensic pathologist from North Carolina. Dr. Larkin testified that because Lopez' slap had not caused immediate bruising and swelling, it was not the fatal blow. Those injuries were apparent later that evening, and it was Dr. Larkin's opinion that the injuries that Dr. Thorpen concluded were caused by a slap were actually caused by a fall.

[¶ 12]  Before the evidentiary hearing, the State had objected to Dr. Larkin's testimony primarily because he had not reviewed the microscopic tissue slides from the autopsy. Because of time and financial constraints of the public defender and the poor health of Dr. Larkin, the defense had arranged for Dr. Larkin to testify by telephone. The State also objected to receiving Dr. Larkin's testimony by telephone; however, the district court allowed it. Dr. Thorpen, the coroner who had testified at trial, also testified at the evidentiary hearing, and he, too, contended that Dr. Larkin's conclusions were suspect because Dr. Larkin had not reviewed the microscopic slides from the autopsy. Upon inquiry, the record shows that Dr. Thorpen and the district attorney had decided that Dr. Thorpen would not provide those slides to Dr. Larkin for his review and, despite Dr. Larkin's several requests for the tissue slides, he was not provided with them.

[¶ 13]  Upon cross-examination, Dr. Larkin stated that examination of the microscopic tissue slides was very important to rendering an opinion. Because Dr. Larkin had been denied access to those slides, his opinion was a "provisional or a limited" opinion. Dr. Larkin, however, believed that the slides would confirm that Herman's fatal head injury was caused by a fall.

---

1.  According to testimony at the evidentiary hearing by defense expert Dr. Larkin, this injury is known as a contrecoup blow.

[¶ 14]   At the conclusion of the evidentiary hearing, the trial court ruled that Lopez had failed in his burden of proof and had not been denied effective assistance of counsel. Our discussion of the evidentiary hearing sets out further details.   Briefing on the ineffectiveness decision was then filed, and this appeal resumed.

## DISCUSSION

### Standard of Review

[¶ 15]   The trial court instructed the jury that "[d]efendant was justified in using deadly force to repel the danger only if he retreated as far as he safely could do before using deadly force."   Lopez challenges use of the term "deadly force," contending that in response to Herman's aggression against him, he pushed Herman back onto a couch with an open hand and his hand hit the right side of Herman's face.   Lopez concedes that witnesses' testimony showed that he struck Herman with a single open handed slap but argues he left no noticeable injury on Herman.   The State's brief states that the evidence shows that Lopez hit Herman once with an open hand slap and angrily shoved him back onto the couch.   The evidence necessarily raises issues concerning whether deadly force was used and whether the State met its burden of proving every element of second degree murder beyond a reasonable doubt.   We, therefore, begin our analysis with the sufficiency of the evidence issues.

[¶ 16]   The standard of review for sufficiency of the evidence issues is well established.   "We assess whether all the evidence presented is adequate to form the basis for an inference of guilt beyond a reasonable doubt to be drawn by a finder of fact when that evidence is viewed in the light most favorable to the State." *Estrada–Sanchez v. State*, 2003 WY 45, ¶ 6, 66 P.3d 703, ¶ 6 (Wyo.2003).

We leave out of consideration the evidence presented by the unsuccessful party which conflicts with the successful party's evidence and afford every favorable inference to the successful party's evidence which may be reasonably and fairly drawn from that evidence.   Even though it is possible to draw other inferences from the evidence presented, the jury has the responsibility to resolve conflicts in the evidence.   We will not substitute our judgment for that of the jury when we are applying this rule; our only duty is to determine whether a quorum of reasonable and rational individuals would, or even could, have come to the same result as the jury actually did.

*Id.*

### Sufficiency of the Evidence

[¶ 17]   Lopez disputes that the State presented sufficient evidence on these elements of second degree murder: 1) that he killed purposely and maliciously and 2) that the single open hand slap caused Herman's death.   The elements of second degree murder are:

Whoever purposely and maliciously, but without premeditation, kills any human being is guilty of murder in the second degree[.]

Wyo.   Stat.   Ann.   § 6–2–104 (LexisNexis 2003).

[¶ 18]   When used as an element of second degree murder, "purposely" means intentionally or deliberately. *State v. Keffer*, 860 P.2d 1118, 1138 (Wyo.1993).   "As so used in the second degree murder statute, 'purposely' is a general-intent element that 'describes the act to be committed and not an intention to produce a desired, specific result.' " *Id.* (quoting *Crozier v. State*, 723 P.2d 42, 54 (Wyo.1986)).   Because second degree murder is a general-intent crime, the evidence to support a conviction for second degree murder must demonstrate "the defendant acted with deliberation, but it does not require evidence that he deliberately killed." *Keffer*, 860 P.2d at 1138 (quoting *Ramos v. State*, 806 P.2d 822, 830 (Wyo.1991)). *See also Young v. State*, 849 P.2d 754, 761–62 (Wyo.1993).   "It follows that 'purposely' distinguishes the act from one committed 'carelessly, inadvertently, accidentally, negligently, heedlessly or thoughtlessly.' " *Keffer*, 860 P.2d at 1138 (quoting *Dean v. State*, 668 P.2d 639, 642 (Wyo.1983) (quoting *Matter of Adoption of CCT*, 640 P.2d 73, 76 (Wyo.1982))).

[¶ 19] Second degree murder requires proof of express, implied, constructive or legal malice. *Keffer*, 860 P.2d at 1138–39. The State must prove circumstances from which legal malice might be justly inferred. *Nunez v. State*, 383 P.2d 726, 729 (Wyo.1963). This form of homicide is a killing that cannot be justified under the law of self-defense, and requires murderous *mens rea*. *See Keats v. State*, 2003 WY 19, ¶ 28, 64 P.3d 104, ¶ 28 (Wyo.2003) ("maliciously" gives a statute "a *mens rea* element, without which it would reach innocent conduct"). The required state of mind for a murder conviction is that degree of mental disturbance or aberration of the mind that is wicked, evil and of unlawful purpose, or of that willful disregard of the rights of others which is implied in the term malice. *Keffer*, 860 P.2d at 1139. Where malice is absent, the crime is manslaughter even if the act that caused the death was done purposely. *Id.*

[¶ 20] The State contends that sufficient evidence was presented when witnesses testified that Lopez had intentionally struck Herman. This evidence satisfies the element of purposely; however, for the element of maliciously, we have only the State's bald assertion that Lopez acted with a "wicked" mind when he struck Lopez. In reviewing sufficiency of the evidence claims, we look at all of the evidence in the light most favorable to the prevailing party. *Estrada-Sanchez*, ¶ 6. Our review of the record confirms that Lopez struck Herman once in sudden anger. Lopez claims that his sudden anger was caused by his concern that his friend would be harmed by drinking whiskey. That irony aside, precedent dictates that the evidence of Lopez' actions and motivations must be reviewed to determine his state of mind. *Eagan v. State*, 58 Wyo. 167, 201–10, 128 P.2d 215, 227–30 (Wyo.1942).

[¶ 21] In the past, we have upheld murder convictions where death was not caused by a weapon but only with fists. *Dryden v. State*, 535 P.2d 483, 495–96 (Wyo.1975); *see also Coca v. State*, 423 P.2d 382, 387–88 (Wyo.1967). Those cases are distinguishable from this case because, in those cases, numerous vicious blows by a fist were inflicted. *Id.* Here, we have one open hand slap, not a blow or blows by a fist. In Wharton's Criminal Law, the statement is made that malice is not to be inferred by a blow with the hand. 2 Charles E. Torcia, *Wharton's Criminal Law* § 141, at 252, 255 (15th ed.1994). LaFave makes the general statement that it would be ridiculous to find murder because of a slap. 2 Wayne R. LaFave, *Substantive Criminal Law* § 14.2(b), at 432 (2d ed.2003). In an overview of the general state of law, it has been said:

> Since death is not the natural or probable result of a blow with the hand, it seems that no intent to kill will, under ordinary circumstances, be inferred, although death results from an assault thus committed.

M.C. Dransfield, Annotation, *Inference of Malice or Intent to Kill Where Killing is by Blow Without Weapon*, 22 A.L.R.2d 854, at 857 (1952). Death caused by the repeated use of fists or feet or boots does present evidence of malice. "[I]n appropriate cases, generally involving big men attacking small, frail men or women or children, *and* generally involving the repeated use of hands and feet, an inference of an intent to kill may properly be drawn." LaFave, *supra*, § 14.2(b), at 432 (emphasis added).

[¶ 22] Both Colorado and Utah have recognized that there is a line of authority that since death is not the natural or probable result of a blow with the hand, no malice will ordinarily be inferred although death results from the assault. *State v. Wardle*, 564 P.2d 764, 765–66 (Utah 1977); *Pine v. People*, 168 Colo. 290, 455 P.2d 868, 869 (1969). These courts reason that the malice necessary to constitute a murder is presumed where the act is deliberate and is likely to be attended with dangerous or fatal consequences. Death or great bodily harm must be the reasonable or probable consequence of the act to constitute murder. The striking of a blow with the fist on the side of the face or head is not likely to be attended with dangerous or fatal consequences, and no inference of malice is warranted by such proof. *Id.* Both states, however, have recognized that an assault with hands or feet may support a conviction for second degree murder where the circumstances show that death resulted from a violent or brutal beating or blows

inflicted to victims susceptible because of age or known infirmity. *Id.* Based on this precedent concerning fists, we believe it reasonable to conclude that these courts would not permit an inference of malice because a slap was delivered by an open hand.

[¶ 23] We observe then that, generally, evidence that death caused by an open hand slap without more is insufficient evidence of malice and, therefore, is not murder. We must then review the record to see what other evidence exists from which we might infer malice. We first note that the record does not show any evidence that Lopez knew that Herman's condition was so frail that Lopez could cause Herman to die with just one slap to his head. The evidence shows that, in addition to the one slap, Lopez shoved Herman down onto a couch. We do not see where a harmless shove could reasonably be seen as the equivalent of repeated blows. The evidence also shows that Lopez became irrationally angry upon seeing that Herman was drinking; however, we have previously held that sudden anger that arises upon provocation is the provocation or lack of malice which makes a homicide manslaughter instead of murder. *Jahnke v. State*, 692 P.2d 911, 919 (Wyo.1984).

[¶ 24] Having reviewed the evidence, we see that Lopez delivered one open hand slap and a man later died. Lopez acted purposely; however, the only evidence of malice is the single open hand slap, and we agree with long standing precedent that, without more, malice cannot be inferred from this minimal act. We hold that the evidence is insufficient as a matter of law that Lopez acted maliciously. Insufficient evidence to support an element of the charged offense amounts to a judgment of acquittal on that charge, and retrial is barred. *Sarr v. State*, 2004 WY 20, ¶ 7, 85 P.3d 439.

[¶ 25] In *Eagan v. State*, 58 Wyo. 167, 128 P.2d 215 (Wyo.1942), Justice Blume examined evidence of malice and made a similar conclusion that the evidence was lacking. In the conclusion, he expressed well the sentiments we feel at coming to our conclusion, and we believe it bears repeating:

After a most painstaking examination of the record before us, and consideration of the questions involved herein, we have, regrettable as the terrible tragedy was, and hesitant as we are to interfere with the verdict of the jury, come to the conclusion under the rules of law heretofore mentioned and the facts, that the defendant was clearly guilty of criminal carelessness, or, at least, that there was ample evidence for the jury to so find. There is, however, such serious doubt as to the defendant's guilt of a greater crime, that the jury should have resolved that doubt in his favor; that, accordingly, the verdict of the jury should be set aside as to murder in the second degree[.]

*Id.*, 58 Wyo. at 210, 128 P.2d at 230.

[¶ 26] We, too, conclude that Lopez' second degree murder conviction must be set aside. In *Eagan,* the court sustained as to manslaughter, which was included in the verdict form, and ordered that the trial court resentence defendant for manslaughter. Lopez' verdict form also included voluntary manslaughter; however, we must examine whether the State proved that the slap caused Herman's death, and we must also examine the various ineffectiveness of counsel issues submitted. We now address those matters.

*Causation*

[¶ 27] At trial, Dr. Thorpen testified that the cause of death was head trauma that occurred when Lopez inflicted his open hand slap. Before trial, a defense expert reviewed Dr. Thorpen's results for one hour and concurred. Defense counsel had filed a motion requesting that the public defender pay the fees of an expert but, at hearing, was allowed to withdraw that motion without prejudice to further research the law. Defense counsel did not renew his motion. Nevertheless, at trial, Lopez contended that his push in self-defense was not the fatal blow and that the fatal blow had been inflicted by an intruder with boots. Defense counsel did not offer his own expert to dispute Dr. Thorpen's testimony, choosing instead to rely upon cross-examination of Dr. Thorpen.

At the evidentiary hearing, defense counsel testified about his strategy as follows:

> Q. ... Did you feel, in the course of your strategy and theme development in the case, that you could use Dr. Thorpen to assist in your defense?
>
> A. I felt that I not only could use him, but I felt that we did in many ways. I felt that he was helpful to the defenses that we had. One of the primary defenses that we had that we used with the jury was the fact that there was no evidence of a blow consistent with the one that Dr. Thorpen described in his testimony. And I think that came out in trial quite well.

As this quotation shows, defense counsel did not dispute that a blow caused death; however, without benefit of an expert, defense counsel did contend that the slap delivered by Lopez was not the fatal blow.

[¶ 28] On appeal, Lopez contended that it was ineffective assistance of counsel not to adequately investigate the victim's actual cause of death by presenting expert testimony that challenged Dr. Thorpen's autopsy results. Before trial, defense counsel had consulted with Dr. Thorpen, who explained his reasoning, and one expert who agreed with Dr. Thorpen's cause of death, meaning that, before trial, counsel had investigated obtaining an expert opinion on causation. The expert, Dr. Randall, investigated two issues for defense counsel, destruction of evidence and cause of death. Dr. Randall billed defense counsel for $150.00 for one hour to review a thirty-five-page autopsy report; however, Dr. Randall could not recall whether he reviewed the police reports, witness statements or tissue slides before determining that Dr. Thorpen had reached the correct result.

[¶ 29] "To establish that he has been denied effective assistance of counsel, a defendant is required to show that counsel's performance was deficient and that, but for this deficient performance, it is reasonably probable that the trial result would have been different." *McCoy v. State*, 886 P.2d 252, 254 (Wyo.1994). "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support

the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* at 255 (emphasis omitted).

[¶ 30] In *McCoy*, we recognized that failure to call an expert witness may constitute ineffective assistance of counsel. *Id.* at 255–56. In *Bloomquist v. State*, 914 P.2d 812 (Wyo.1996), we stated that "the defendant must show that such expert testimony was available and necessary" and that "[a]ppellant must show that an expert was available who would have testified consistently with his theory." *Id.* at 820. Showing that an expert was available who would have testified consistently on a necessary issue is proof of deficient performance; however, a defendant must also show that this deficient performance prejudiced him. *McCoy*, 886 P.2d at 256. This showing of prejudice requires proof that, but for counsel's deficient performance, the outcome of the trial would have been different. *Id.*

[¶ 31] After the evidentiary hearing, the trial court concluded:

> [D]efendant asserts that his trial counsel was ineffective with respect to his investigation, preparation, and failure to present evidence concerning the cause or mode of death of the victim in this matter. The testimonies of James Wolf, Glenn Larkin, M.D., and the defendant contend that more should have been done to attack the prosecution's evidence on this topic. However, the unrefuted evidence presented by attorney Tom Sedar and James Thorpen, M.D. was that defense counsel did investigate and check into the basis for the coroner's opinions as to the cause of death of the victim. Additionally, it appears that trial counsel made knowing and considered tactical trial decisions relative to the handling of the cause of death issue in connection with the theory of the defense presented to the jury at trial.
>
> ... It is not inadequate assistance of counsel to not pursue investigation of technical matters or not call expert witnesses at trial when such cannot be said to have been required by a reasonably competent attor-

ney under like circumstances. *Lower v. State,* 786 P.2d 346, 349 (Wyo.1990)....

Additionally, it must be concluded that the evidence presented at hearing in this case does not show that the alleged problems with the representation of the defendant at trial demonstrate that counsel's deficiency prejudiced the defense of his case. *Schmidt v. State,* 29 P.3d 76, 86 (Wyo.2001). At trial in this action, the defense presented substantial evidence and argument relative to its theory of the means of the victim's death. While appellate counsel now wishes to develop an issue relative to the cause of death, it appears to this judge that the defendant is really attempting to after-the-fact manufacture a defense for which there is little evidentiary support. Counsel is not ineffective for failing to raise a defense for which there is no evidentiary support.

[¶ 32] At the evidentiary hearing, an expert testified that, before trial, defense counsel recognized the need for an expert on causation; however, his efforts to secure that testimony were not reasonable. The expert stated that his review of the police and the coroner's reports immediately showed that the case was about the cause of death and, at the least, Dr. Thorpen's opinion was going to have to be tested by the forensic testimony of another pathologist. Ordinarily, he opined, an appropriate review would require a greater amount of time than one hour and would include all police reports, witness statements, autopsy reports, and review of tissue slides. The expert concluded that defense counsel did not act reasonably by accepting such a minimal review by an expert.

[¶ 33] The evidentiary hearing established that an expert witness existed who would have testified favorably at Lopez' trial but defense counsel failed to conduct a diligent search for that expert. *See Hamburg v. State,* 820 P.2d 523, 528 (Wyo.1991). The cause of death in this case was crucial, and Dr. Larkin's testimony establishes a clear probability that Lopez' slap was not the cause of death and a strong argument existed

that Dr. Thorpen's conclusions of the cause of the fatal injury were in error. The requisite showing that expert testimony was available and necessary having been made, we conclude that defense counsel's failure to obtain a proper review of the autopsy report and all associated evidence by a forensic pathologist was deficient performance.

[¶ 34] Lopez is not guilty of manslaughter unless his slap caused Herman's death. Complex causal relationships require expert testimony, and it is for the jury to then determine whether the State's circumstantial evidence has proved beyond a reasonable doubt that Lopez' act caused Herman's death. Should Dr. Larkin's testimony survive State challenge, it is probable that a different verdict will result. Lopez has thus established prejudice, and this case is remanded for new trial on manslaughter.

[¶ 35] Finally, we must consider the matter of the State's refusal to provide Dr. Larkin with the autopsy tissue slides and its objection to his report and testimony on that basis. This Court's directive that an evidentiary hearing be held on the issue of whether expert testimony was available and necessary mandated that the district court and the defense receive the full cooperation of the State. The State did not comply with this Court's directive and, thus, crippled the defense' ability with the result that Dr. Larkin has provided only a limited opinion. While we appreciate the State's concern with safeguarding evidence, we are confident the State has the resources to make appropriate arrangements. The State is ordered to provide all tissue slides if so requested by the defense or, alternatively, the defense may choose instead to rely upon the present version of Dr. Larkin's report and testimony which shall not be subjected to any *Daubert*[2] challenge but shall be admissible at a new trial.

*Suppression of Statement*

██ [¶ 36] Lopez contends that the district court erred by denying his motion to suppress statements he made to law enforce-

---

2. *Bunting v. Jamieson,* 984 P.2d 467, 471–73 (Wyo.1999) (formally adopting in Wyoming the four non-exclusive tests to the facts at hand

enunciated in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 592–94, 113 S.Ct. 2786, 2796–97, 125 L.Ed.2d 469 (1993)).

ment officers, alleging that such statements were made in the absence of the warnings required by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and in response to questions posed by officers after he made an unequivocal request for counsel.

[¶ 37] We review de novo a district court's ruling on a motion to suppress for involuntariness. *Simmers v. State,* 943 P.2d 1189, 1194 (Wyo.1997). We will not disturb a district court's findings on the factual issues of a motion to suppress unless the findings are clearly erroneous. *Id.* Because the trial court has the opportunity to assess the witnesses' credibility, to weigh the evidence, and to make the necessary inferences, deductions and conclusions, we view the evidence in the light most favorable to the district court's determination. *Id.*

[¶ 38] The trial court determined that Lopez' statements to police when he was asked to go to the police station and make a statement were voluntary as was his waiver of *Miranda* rights that occurred about five minutes after police began his interview. At some point, Lopez asked about obtaining a lawyer and specified one by name and inquiry ceased. Our review of the record shows that these findings are not clearly erroneous, and the district court's order denying the motion to suppress is affirmed.

*Destruction of Evidence*

[¶ 39] Before trial, Lopez filed a motion to dismiss charges because Dr. Thorpen released Herman's body and it was cremated before Lopez could have it independently examined. He alleges that Dr. Thorpen's examination was not independent or professional. Following a hearing, the trial court denied that motion.

[¶ 40] Although we have not considered the specific issue with respect to cremation of a homicide victim's body as violating a defendant's right, we have established a general rule for a prosecution's failure to preserve evidence. We have said:

In *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963), the Supreme Court of the United States

held that the State is required to preserve evidence. That requirement is "limited to evidence which can be expected to play a significant role in the defendant's defense * * * and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Wilde v. State,* 706 P.2d 251, 255 (Wyo.1985) (citing *California v. Trombetta,* 467 U.S. 479, 488, 104 S.Ct. 2528, 2529–30, 81 L.Ed.2d 413 (1984)).

*Lee v. State,* 2 P.3d 517, 524 (Wyo.2000).

[¶ 41] Lopez contends that by not notifying defendant or his attorney that the State intended to release the body to relatives, the State acted with bad faith. Lopez provides us with no authority that the coroner or the State had this duty. Our study suggests that Lopez was charged with the responsibility of timely requesting retention of the body for an independent examination; however, we do not decide the issue. Michael J. Yaworsky, J.D., Annotation, *Homicide: Cremation of Victim's Body as Violation of Accused's Rights,* 70 A.L.R.4th 1091 (1989). A body is a unique type of evidence because it is subject to decay and not easily preserved for evidence purposes. Families understandably wish the release of the crime victim's body for burial or, as in this case, cremation and if, as here, all of the coroner's reports, tests, photographs, and tissue slides are available to the defendant, then the defendant has obtained comparable evidence by other reasonably available means. We find no error on the part of the trial court and affirm its order denying the motion to dismiss charges.

**CONCLUSION**

[¶ 42] A second degree murder conviction requires that the State prove beyond a reasonable doubt that the defendant killed maliciously. Our review of the evidence showed that the State did not prove this element, and the conviction for second degree murder is reversed and retrial on that charge is barred. Defense counsel provided ineffective assistance of counsel to Lopez when he failed to have expert testimony on the issue of causation at trial. This case is therefore remanded to the district court for a new trial on voluntary manslaughter. The State is or-

dered to provide all tissue slides if so requested by the defense or, alternatively, the defense may choose instead to rely upon the present version of Dr. Larkin's report and testimony which shall not be subjected to any *Daubert* challenge but shall be admissible at a new trial.