2012 WY 91

**Kevin Eugene KIDWELL, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. S–11–0238.**

Supreme Court of Wyoming.

June 27, 2012.

Representing Appellant: Diane Lozano, State Public Defender, PDP; Tina N. Olson, Appellate Counsel; Kirk A. Morgan, Senior Assistant Appellate Counsel.

Representing Appellee: Gregory A. Phillips, Attorney General; David L. Delicath, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

KITE, Chief Justice.

[¶ 1]   Kevin Eugene Kidwell challenges his convictions for false imprisonment and simple assault.   He claims the prosecutor committed misconduct by failing to give prior notice of evidence suggesting he had attempted to persuade a witness to testify falsely in his favor at trial in violation of W.R.E. 404(b).   Mr. Kidwell has failed to demonstrate a clear violation of law or any prejudice;   consequently, we affirm.

## ISSUE

[¶ 2]   Mr. Kidwell presents the following issue on appeal:

Did the prosecutor commit misconduct when he admitted [sic] 404(b) evidence without providing notice?

The State provides a more detailed statement of the issue:

Proposed defense witness, Andrew Scott, abandoned his plan to testify falsely on Kidwell's behalf and advised the prosecution of both his plan and his change of heart shortly before the end of the noon recess on the third day of trial. Without first notifying defense counsel, the prosecutor called Scott, to repeat his story, as the second witness of the afternoon. Does the record as a whole support the district court's conclusion that the prosecutor's omission was neither misconduct nor prejudicial?

## FACTS

[¶ 3]   Mr. Kidwell and the victim, who was his girlfriend, lived together in an apartment in Casper, Wyoming. The record contains a great deal of information about the history of the parties' relationship; however, it is sufficient at this juncture to note that it was tumultuous, with the parties frequently fighting and the victim occasionally leaving the apartment to stay elsewhere for periods of time.

[¶ 4]   In early June 2010, the victim spent several days in Medicine Bow with a recent acquaintance. She returned to the apartment she shared with Mr. Kidwell on June 12 or 13, 2010. On June 14, 2010, the couple began to fight. The fight escalated, and Mr. Kidwell repeatedly grabbed and choked the victim throughout the day. The victim also claimed that he threatened her with a hammer. That evening, they traveled to a gas station to get cigarettes. Mr. Kidwell left the victim in his pickup truck when he went into the store. He left the keys in the ignition, and the victim took that opportunity to leave and drive to a local hospital.

[¶ 5]   Hospital staff and law enforcement officers observed that the victim's body was covered in bruises. She also had a sore throat, difficulty swallowing and other symptoms resulting from the choking. Mr. Kidwell was charged with one count of kidnapping; one count of aggravated assault and battery (unlawfully attempting to cause serious bodily injury); one count of aggravated assault and battery (threatening to use a drawn deadly weapon—the hammer); and one count of interference with an emergency "911" call.

[¶ 6]   The matter went to trial in January 2011. The defense listed Andrew Scott as a witness. The prosecution interviewed Mr. Scott during the lunch break on the third day of trial. He had been Mr. Kidwell's cellmate at the Natrona County jail and reported that he had witnessed Mr. Kidwell and the victim at the gas station on June 14, 2010. He stated that the victim was the aggressor and Mr. Kidwell was simply trying to defend himself and calm her down. A short time after recounting this tale to the prosecution's investigator, Mr. Scott recanted and stated that he had been lying and, in fact, had not seen the victim and Mr. Kidwell at the gas station.

[¶ 7]   Although Mr. Scott had been listed as a defense witness, the prosecution called him to the stand and had him recount his original plan to testify in Mr. Kidwell's favor and his subsequent change of heart. Mr. Kidwell did not object to either the State calling Mr. Scott as a witness or the testimony about his original story and his recantation. The defense, however, later moved for a mistrial because it had not been given prior notice of Mr. Scott's testimony. The defense did not specifically mention W.R.E. 404(b) in its mistrial motion. Instead, defense counsel argued the State was "put on notice that this witness was going to testify falsely, did not notify myself about that; but rather chose to place him on the stand and have it come out on the stand in front of the jury. We at least—it's a violation of discovery. . . . At least we would have requested a hearing before the Court on whether or not that information would be admissible." The district court denied the mistrial motion.

[¶ 8]   The jury returned a verdict which was decidedly favorable to Mr. Kidwell.

They acquitted him on the kidnapping charge and the lesser included offense of felonious restraint. They convicted him, however, of the lesser included misdemeanor, false imprisonment. The jury also acquitted Mr. Kidwell on the charge of aggravated assault and battery—serious bodily injury, but convicted him of the lesser included misdemeanor, simple assault. The jury returned not guilty verdicts on Counts Three and Four—aggravated assault and battery with a drawn deadly weapon and interference with an emergency 911 call. After the district court sentenced him, Mr. Kidwell appealed.

## STANDARD OF REVIEW

[¶ 9] This case comes to us in an unusual procedural stance. Although Mr. Kidwell claims the evidence of Mr. Scott's plan to testify falsely was other bad acts evidence and governed by W.R.E. 404(b) procedural requirements, he does not specifically challenge the admissibility of the evidence or analyze it under the relevant factors. *See, e.g., Gleason v. State,* 2002 WY 161, ¶ 18, 57 P.3d 332, 340 (Wyo.2002). In addition, although he moved for a mistrial in the district court, he does not expressly challenge the district court's denial of his motion. Instead, he maintains that the prosecutor committed misconduct by failing to give the defense notice of Mr. Scott's testimony.

[¶ 10] "Allegations of prosecutorial misconduct are settled by reference to the entire record and 'hinge on whether a defendant's case has been so prejudiced as to constitute denial of a fair trial.'" *Schreibvogel v. State,* 2010 WY 45, ¶ 39, 228 P.3d 874, 887 (Wyo.2010), quoting *Mazurek v. State,* 10 P.3d 531, 542 (Wyo.2000). *See also, Benjamin v. State,* 2011 WY 147, ¶ 50, 264 P.3d 1, 13 (Wyo.2011). Because Mr. Kidwell did not pose a contemporaneous objection to Mr. Scott's testimony, he has the burden of demonstrating plain error. "Plain error exists when: 1) the record is clear about the incident alleged as error; 2) there was a transgression of a clear and unequivocal rule of

law; and 3) the party claiming the error was denied a substantial right which materially prejudiced him." *Talley v. State,* 2007 WY 37, ¶ 9, 153 P.3d 256, 260 (Wyo.2007).

## DISCUSSION

[¶ 11] On appeal, Mr. Kidwell maintains the prosecutor violated the notice requirements we have implemented for W.R.E. 404(b) evidence.[1] In *Howard v. State,* 2002 WY 40, ¶ 23, 42 P.3d 483, 491 (Wyo.2002), we stated:

We now hold that where a defendant files a pretrial demand for notice of intent to introduce evidence under W.R.E. 404(b), the same shall be treated as the making of a timely objection to the introduction of such evidence. The State must then respond with sufficient information to meet the balance of the *Huddleston* test adopted in *Vigil.* Not only will such a rule enhance the defendant's prospects of receiving due process and a fair trial, it will also enhance the district court's ability to reflect and rule upon a significant evidentiary issue. Rulings on uncharged misconduct evidence are too important to be made in the heat and pressure of a trial, with the jury twiddling its thumbs in the next room.

[¶ 12] Mr. Kidwell filed a pretrial demand for notice of intent to introduce 404(b) evidence, and the State gave notice that it intended to introduce other evidence under Rule 404(b) but did not include Mr. Scott's testimony. As a threshold matter, we must determine whether the evidence of Mr. Scott's plan to fabricate testimony falls within the purview of W.R.E. 404(b). That rule reads:

*(b) Other crimes, wrongs, or acts.*—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that

---

1. As we stated above, in arguing that a mistrial should be declared, defense counsel did not mention Rule 404(b) and stated, instead, that the State had simply violated its discovery obligations by failing to give notice of Mr. Scott's testimony. He does not, however, argue on appeal that the State violated its discovery responsibilities under any other rules.

upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

[¶ 13] In order to be considered under Rule 404(b), the proposed testimony must be evidence of "other crimes, wrongs, or acts." Here, there was no clear indication that Mr. Kidwell committed any other crime, wrong or act with respect to Mr. Scott's testimony. Mr. Scott testified that he and Mr. Kidwell had discussed their cases with one another while sharing a cell at the Natrona County jail and he decided that he could testify on behalf of Mr. Kidwell. During questioning by the prosecutor, Mr. Scott described the false testimony he was going to give:

Q. What had you planned on testifying about as to what happened at the Red Eagle?

A. I was going to tell the Courts [sic] that I was sitting across the street at the Colonial Motel and that I seen his ex-girlfriend going off on him, assaulting him.

Q. Is any of that true?

A. I did not personally witness it.

Q. Were you even there?

A. No.

. . . .

Q. And what were you going to testify to that's not true?

A. I was going to say that I had seen his ex-girlfriend there drunk, that I had witnessed him trying to keep her calm, going inside the Red Eagle, and coming back out, and that I was going to witness that she's the one that assaulted him and then took off with his truck.

Q. None of that's true?

A. Not that I know of.

. . . .

Q. . . . [T]hen today, you had a discussion when Detective Wes Gudahl showed up; is that correct?

A. Yes, sir.

Q. And he had asked you about your testimony that you were planning; is that correct?

A. Yes.

Q. And you—you didn't inform him at the time, Mr. Gudahl, that you were going to testify falsely or did you?

A. No, I did not.

Q. Okay. You got thinking about it and then you came to me; is that correct?

A. I came to Mr. Gudahl first.

Q. Okay. And you had a—you had an opportunity to think about what you were going to do?

A. Yes, sir.

Q. You recognize—

A. I've been thinking about this for a couple weeks, and it's been eating at me hard.

Q. You knew that you were going to commit perjury on the witness stand?

A. Yes.

[¶ 14] Mr. Scott stated, however, that Mr. Kidwell had not asked him to testify falsely in his favor and never agreed to the plan. The most that can be said of Mr. Kidwell's actions with regard to Mr. Scott's plan to testify is that he passively acquiesced to the plan. Mr. Scott stated: "[Mr. Kidwell] never agreed. He never disagreed. He just kind of left it up in the air."

[¶ 15] Mr. Kidwell testified about his discussion with Mr. Scott at trial. He stated that, after the victim had driven away from the gas station in his truck, he talked to a gentleman in a white van who had asked if he needed any help. While they were visiting in jail, Mr. Scott told Mr. Kidwell that he was the man in the white van, although that did not turn out to be true. Mr. Kidwell also stated that he did not ask Mr. Scott to testify for him at all, and certainly not to testify falsely on his behalf. The thrust of this testimony is that Mr. Kidwell did not attempt to persuade Mr. Scott to testify falsely. As such, there was no "other crime, wrong or act" and the State was not required to give notice under Rule 404(b).[2] The record does

**2.** We recognize that this analysis essentially renders Mr. Scott's testimony irrelevant. However, Mr. Kidwell makes no argument that the evi-

not, therefore, demonstrate a violation of a clear and unequivocal rule of law.

[¶ 16] Mr. Kidwell also has not demonstrated prejudice as a result of Mr. Scott's testimony. As we explained above, the evidence did not establish that Mr. Kidwell attempted to persuade Mr. Scott to testify falsely and, consequently, it was not prejudicial to Mr. Kidwell. Moreover, Mr. Kidwell was convicted of only two misdemeanors as a result of the altercation with the victim—false imprisonment and simple assault. The district court instructed the jury on the elements of false imprisonment, as follows:

> The elements of the crime of False Imprisonment, as a lesser included offense of the charge of Kidnapping, as charged in Count One of the Amended Information in this case, are:
>
> 1. On or about the 14th day of June, 2010 through on or about the 15th day of June, 2010
> 2. In Natrona County, Wyoming
> 3. The Defendant, Kevin Eugene Kidwell
> 4. Knowingly and unlawfully
> 5. Restrained another person, [the victim] and
> 6. That restraint substantially interfered with the liberty of [the victim].

The district court also instructed the jury on the crime of simple assault in Instruction No. 21:

> The elements of the crime of Simple Assault, as a lesser included offense of the charge of Aggravated Assault and Battery, Serious Bodily Injury, as charged in Count Two of the Amended Information in this case, are:
>
> 1. On or about the 14th day of June, 2010 through on or about the 15th day of June, 2010
> 2. In Natrona County, Wyoming
> 3. The Defendant Kevin Eugene Kidwell
> 4. Having the present ability to cause bodily injury to another person, [the victim]
> 5. Unlawfully attempted to cause bodily injury to that person.

dence should have been excluded as irrelevant

[¶ 17] The evidence on these two counts was overwhelming. With regard to the false imprisonment charge, the victim testified that Mr. Kidwell had restrained her by choking her and grabbing her numerous times over the course of the day. She testified:

> Q. Do you recall how it is you got a lot of these bruises?
>
> A. Him [Mr. Kidwell] grabbing me, throwing me down, trying to keep me from leaving.

That restraint obviously substantially interfered with her liberty as she was pinned to the spot and unable to leave. Another witness testified that he had observed Mr. Kidwell forbid the victim from leaving the apartment on another occasion. This evidence was clearly sufficient for the jury to find Mr. Kidwell guilty of false imprisonment.

[¶ 18] The evidence on the simple assault charge was also compelling. Again, the victim testified that Mr. Kidwell had grabbed and choked her many times. The medical and law enforcement testimony confirmed that she had numerous bruises and superficial injuries. This evidence was unquestionably sufficient to establish that Mr. Kidwell had the ability to cause injury to the victim and unlawfully attempted to do so.

[¶ 19] Under these circumstances where Mr. Scott and Mr. Kidwell both testified that Mr. Kidwell did not persuade Mr. Scott to testify falsely and the evidence established that Mr. Kidwell attacked and restrained the victim, Mr. Scott's testimony, even if it were considered improper, did not sway the jury. There is simply no basis to find that Mr. Kidwell's case was "so prejudiced as to constitute denial of a fair trial.'" *Schreibvogel*, ¶ 39, 228 P.3d at 887, quoting *Mazurek*, 10 P.3d at 542.

[¶ 20] Affirmed.