2012 WY 137

**Luke Edward MICKELSON,**
**Appellant (Defendant),**

v.

**The STATE of Wyoming,**
**Appellee (Plaintiff).**

**No. S–11–0285.**

Supreme Court of Wyoming.

Oct. 30, 2012.

Representing Appellant: Diane Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel; David Westling, Appellate Counsel; Wyoming Public Defender Program. Argument by Mr. Westling.

Representing Appellee: Gregory A. Phillips, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Jeffrey Pope, Assistant Attorney General. Argument by Mr. Pope.

Before GOLDEN,* HILL, VOIGT, and BURKE, JJ., and CAMPBELL, D.J.

CAMPBELL, District Judge.

[¶ 1]   Luke Edward Mickelson appeals his conviction for unlawful possession with intent to deliver a controlled substance, contending the Court improperly admitted lay opinion testimony concerning Mr. Mickelson's level of intoxication, and that he was denied effec-tive assistance of counsel.  Finding no error, we affirm.

## ISSUES

[¶ 2]   Mr. Mickelson presents two issues for this Court's consideration:

   I.   Was trial defense counsel ineffective?

  II.  Did the testimony of two bartenders about intoxication invade the province of the trier of fact?

## FACTS

[¶ 3]   Mr. Mickelson had apparently been drinking at a friend's house since mid-day on November 2, 2010, through and into November 3, 2010.  After he left the friend's house, ostensibly to go to the bank, he encountered his brother and friends behind the Buckhorn Bar and had more drinks.  According to Mr. Mickelson, a friend of his brother's gave him a bag of marijuana as a gift.  Mr. Mickelson then proceeded to the bank and withdrew $2,000 that he intended to use to pay bills and purchase Christmas presents.

[¶ 4]   After going to the bank, Mr. Mickelson entered the Third Street Bar, and after ordering and paying for a drink, he placed a tip on the bar for bartender Britnee Tonille which included both money and a marijuana "bud" on top of the money.  Ms. Tonille threw the marijuana away—though at some point Mr. Mickelson retrieved the marijuana from the trash.  He again placed the marijuana on the counter in front of three men at the bar, but again Ms. Tonille threw it in the trash.  Mr. Mickelson continued in this behavior until special agents of the Wyoming Division of Criminal Investigation placed him under arrest.  Shortly before agents confronted him, Vaughn Neubauer, an attorney who had previously represented Mr. Mickelson, arrived at the Third Street Bar.  Mr. Neubauer saw the bag of marijuana and told Mr. Mickelson to put it away.  Mr. Mickelson again waved the bag around, which caused Mr. Neubauer to take the bag and put it in his pocket.  Mr. Neubauer testified at trial not only about the events at the bar but about his previous representation of Mr.

* Justice Golden retired effective September 30,     2012

Mickelson with regard to alcohol-related offenses.

[¶ 5] At trial, Ms. Tonille testified to the events of November 3, 2010, including the actions of Mr. Mickelson in the bar. She testified that she thought Mr. Mickelson was not too intoxicated to serve. Three of the men who were at the bar that afternoon, Jimmie Biles, Joshua Nerby, and Justin Groshart, testified variously about their observations of Mr. Mickelson, indicating while they thought he was "drunk" they did not observe him consume a great many drinks at the bar. Mr. Groshart, who was a bartender at another bar, testified that from his experience Mr. Mickelson was not so drunk that a bartender should not serve him. While the observations varied somewhat, all witnesses noted Mr. Mickelson's slurred speech.

[¶ 6] Two special agents of the Wyoming Division of Criminal Investigation also testified at trial about their observations of Mr. Mickelson's behavior while they were present in the bar. While noting he believed Mr. Mickelson was drunk, Special Agent Morrow also noted that Mr. Mickelson was able to perform functions such as operating the jukebox. Special Agent Crumpton also offered the opinion that Mr. Mickelson appeared drunk, but observed that he did not have any difficulty conversing with others or operating the jukebox. Special Agent Crumpton further offered the observation that Mr. Mickelson requested that the officers complete their confrontation with him in the alley and also asked to speak specifically with Mr. Neubauer, who he referred to as his attorney. Special Agent Crumpton testified that Mr. Mickelson was evaluated by jail personnel to insure there were not dangerous levels of intoxication necessitating medical treatment, and they concluded no treatment for over-intoxication was necessary.

[¶ 7] Mr. Mickelson testified at trial. He admitted showing the marijuana but testified he could not remember giving any to Ms. Tonille or the other men at the bar. He testified that in addition to the alcohol he drank, he was also taking prescription medications at the time.

[¶ 8] The State originally charged Mr. Mickelson with two counts on November 5, 2010: 1) attempt to deliver a controlled substance, marijuana, and 2) delivery of a controlled substance, marijuana. Ten days later the State filed an amended information alleging the single offense of unlawful possession with intent to deliver a controlled substance, marijuana, in violation of Wyo. Stat. Ann. § 35–7–1031(a)(ii) (LexisNexis 2011), which provides:

(a) Except as authorized by this act, it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance. Any person who violates this subsection with respect to:

(ii) Any other controlled substance classified in Schedule I, II or III, is guilty of a crime and upon conviction may be imprisoned for not more than ten (10) years, fined not more than ten thousand dollars ($10,000.00), or both[.]

[¶ 9] Following Mr. Mickelson's waiver of his right to a jury trial, the matter was tried to the Court, and he was convicted of that offense. He timely filed this appeal.

## DISCUSSION

### A. *Lay Witness Testimony*

[¶ 10] Mr. Mickelson's defense at trial was that he was too intoxicated to form the specific intent to deliver the marijuana.[1]

---

1. Wyoming Statute § 6–1–202 provides that self-induced intoxication is a defense to specific intent crimes. The statute reads as follows:

(a) Self-induced intoxication of the defendant is not a defense to a criminal charge except to the extent that in any prosecution evidence of self-induced intoxication of the defendant may be offered when it is relevant to negate the existence of a specific intent which is an element of the crime.

(b) Intoxication is self-induced if it is caused by substances which the defendant knows or ought to know have the tendency to cause intoxication and which he knowingly and voluntarily introduced or allowed to be introduced into his body unless they were introduced pursuant to medical advice. The fact that the defendant is dependent upon the intoxicating substance is not relevant in determining whether his intoxication is self-induced.

Wyo. Stat. Ann. § 6–1–202 (LexisNexis 2011). Unlawful possession with intent to deliver a con-

Mr. Mickelson argues the testimony of the bartenders at trial concerning his level of intoxication was an improper opinion concerning his guilt. While recognizing that the bartenders did not express an opinion concerning his guilt directly, he argues that they expressed an opinion that his defense was invalid and that was equivalent to an opinion as to guilt.

[¶ 11] Where, as here, no objection is posed to proffered evidence,[2] this Court conducts a plain error review. *Kidwell v. State*, 2012 WY 91, ¶ 10, 279 P.3d 540, 543 (Wyo.2012). "Plain error exists when: 1) the record is clear about the incident alleged as error; 2) there was a transgression of a clear and unequivocal rule of law; and 3) the party claiming the error was denied a substantial right which materially prejudiced him." *Id.*

[¶ 12] While the record clearly shows the alleged error, there was no transgression of a clear and unequivocal rule of law. Wyoming Rule of Evidence 701 provides that the testimony of lay witnesses "is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." Witnesses may not, however, express an opinion as to the guilt of the accused. *Cureton v. State*, 2007 WY 168, ¶ 10, 169 P.3d 549, 551 (Wyo.2007). "Opinion testimony, however, is not improper simply because it 'embraces an ultimate issue to be decided by the trier of fact.'" *Id.* (citing W.R.E. 704).

[¶ 13] The question here concerns Ms. Tonille's and Mr. Groshart's testimony and observations as to Mr. Mickelson's level of intoxication—specifically that he was not too intoxicated to be served alcohol. Contrary to Mr. Mickelson's assertion, no opinion concerning guilt was offered by any witness. Testimony concerning a defendant's intoxication is admissible lay witness opinion testimony as long as the witness states the facts on which the opinion is based. *Wilks v.*

*State*, 2002 WY 100, ¶ 23, 49 P.3d 975, 985 (Wyo.2002). In this case, both Ms. Tonille and Mr. Groshart based their opinion on their observations of Mr. Mickelson in the bar that day. Ms. Tonille specifically described Mr. Mickelson's actions, including that he played the jukebox, interacted with others, and talked on his phone. This Court has said that "most adults are sufficiently experienced with people who have been drinking to offer an opinion as to whether a person is, in fact, intoxicated from alcohol based on their personal observations." *Id.*

[¶ 14] The trial court, as the trier of fact, had to decide "whether intoxication could prevent the formation of the requisite intent." *Brett v. State*, 961 P.2d 385, 391–92 (Wyo.1998). Again, contrary to Mr. Mickelson's contention, none of the witnesses testified concerning his specific intent—that ultimate conclusion was left to the trial court. Mr. Mickelson argues that the trial court should not have substituted its judgment for that of the bartenders. There is no suggestion that the court did that, but rather weighed the evidence and found the bartenders testimony the most persuasive. The trial court stated:

> The most persuasive testimony heard by this Court on that issue was given by two lay witnesses, both of those witnesses trained by the State of Wyoming to recognize extreme intoxication by bar patrons. The first of those witnesses, Ms. Tonille, testified that she was not concerned about the intoxication level of Mr. Mickelson; that he was functioning that day, although clearly under the influence of alcohol.

> The second of those witnesses, Mr. Groshart, also trained by the State of Wyoming to recognize, as a bartender, signs of extreme intoxication, testified that he also would have served Mr. Mickelson had Mr. Mickelson been in his establishment. He testified that while it was clear Mr. Mickelson was under the influence of alcohol, there was no doubt in his mind that Mr. Mickelson continued to function.

trolled substance is a specific intent crime. *Dorador v. State*, 573 P.2d 839, 843 (Wyo.1978).

2. Appellant correctly notes that while an objection was made concerning Mr. Groshart's testimony it was not the proper objection.

[¶ 15] The testimony of Ms. Tonille and Mr. Groshart was based on their observations of Mr. Mickelson and was helpful to the fact-finder's determination of whether Mr. Mickelson had the requisite intent. As a result, plain error did not occur.

## B. *Ineffective Assistance of Counsel*

[¶ 16] This Court engages in *de novo* review in a claim of ineffective assistance of counsel. *Jenkins v. State*, 2011 WY 141, ¶ 5, 262 P.3d 552, 555 (Wyo.2011). "An appellant claiming ineffective assistance of counsel must demonstrate on the record that: 1) counsel's performance was deficient and 2) prejudice resulted." *Id.*

When reviewing a claim of ineffective assistance of counsel, the paramount determination is whether, in light of all the circumstances, trial counsel's acts or omissions were outside the wide range of professionally competent assistance. *Hirsch [v. State*, 2006 WY 66], ¶ 15, 135 P.3d [586] at 593 [ (Wyo.2006) ]. We indulge a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* Under the two-prong standard articulated in *Strickland [v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984) ], to warrant reversal on a claim of ineffective assistance of counsel, an appellant must demonstrate that his counsel failed to render such assistance as would have been offered by a reasonably competent attorney and that counsel's deficiency prejudiced the defense of the case. *Id.* "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.*, quoting *Strickland*, 466 U.S. at 686, 104 S.Ct. [at 2064].

The burden of proving that counsel was ineffective rests entirely on the appellant. *Martinez v. State*, 2006 WY 20, ¶ 23, 128 P.3d 652, 663 (Wyo.2006). The appellant must also demonstrate the existence of a reasonable probability that, absent the deficiency in counsel's performance, the re-

sult of the proceedings would have been different. *Id.* A failure to make the required showing of either deficient performance or sufficient prejudice defeats an ineffectiveness claim. *Id.* An ineffectiveness claim may be disposed of solely on the ground of lack of sufficient prejudice. *Id. Dettloff [v. State* ], 2007 WY 29, ¶¶ 18–19, 152 P.3d [376] at 382–83. We have also stated that when assailing counsel's assistance, an appellant must provide more than mere speculation or equivocal inferences. *Duke v. State*, 2004 WY 120, ¶ 36, 99 P.3d 928, 943 (Wyo.2004), *cert. denied*, 544 U.S. 1062, 125 S.Ct. 2513, 161 L.Ed.2d 1113 (2005).

*Jenkins*, ¶ 6, 262 P.3d at 555.

[¶ 17] Mr. Mickelson argues that his trial counsel was ineffective in four ways: (1) by failing to call an expert witness, (2) by soliciting prior bad acts evidence on cross-examination of a witness, (3) by failing to call a witness, and (4) by failing to object to certain testimony. Here the presumption of effective performance of counsel has not been overcome, as the strategic decision of trial counsel to defend on the basis of a lack of specific intent due to self-induced intoxication was reasonably thought out and presented.

### 1. *Failure to Call an Expert*

[¶ 18] Mr. Mickelson primarily faults trial counsel for not calling an expert witness.

In *McCoy [v. State*, 886 P.2d 252 (Wyo. 1994) ], we recognized that failure to call an expert witness may constitute ineffective assistance of counsel. *Id.* at 255–56. In *Bloomquist v. State*, 914 P.2d 812 (Wyo. 1996), we stated that "the defendant must show that such expert testimony was available and necessary" and that "[a]ppellant must show that an expert was available who would have testified consistently with his theory." *Id.* at 820. Showing that an expert was available who would have testified consistently on a necessary issue is proof of deficient performance; however, a defendant must also show that this deficient performance prejudiced him. *McCoy*, 886 P.2d at 256. This showing of prejudice requires proof that, but for coun-

sel's deficient performance, the outcome of the trial would have been different. *Id.* *Strandlien v. State,* 2007 WY 66, ¶ 21, 156 P.3d 986, 992–93 (Wyo.2007) (quoting *Lopez v. State,* 2004 WY 28, ¶¶ 29–30, 86 P.3d 851, 860 (Wyo.2004)).

[¶ 19] Mr. Mickelson argues that William Bender, a therapist and addiction counselor at InnerBalance, was available to testify. Trial counsel had listed Dr. Joe Eisely, also of InnerBalance, as a trial witness but did not call him. Mr. Bender eventually testified at sentencing about the InnerBalance program Mr. Mickelson attended. Mr. Mickelson argues that Mr. Bender (or presumably Dr. Eisely) would have been able to testify that as an alcohol addict Mr. Mickelson was unable to control his behavior once he began drinking. Mr. Mickelson also argues that Mr. Bender would have been able to address the effects of the prescription medication that Mr. Mickelson was taking on November 3, 2010.

[¶ 20] Whether either Dr. Eisley or Mr. Bender would have met the evidentiary predicates to testify as an expert we do not know. Assuming for purposes of this argument one of them was an expert as Mr. Mickelson suggests, that would have been of little value to the defense. While, even if he would have provided general evidence concerning the effect of mixing prescription medication and alcohol, the issue before the trial court was only Mr. Mickelson's specific behavior on November 3. Neither Mr. Bender, nor any other expert, had the ability to evaluate that as he was not present. Both the direct evidence as well as matters elicited on cross-examination from nearly all the witnesses established objective evidence that Mr. Mickelson was under the influence. An expert would not have been able to opine as to Mr. Mickelson's ability to form specific intent on that particular date. Even if allowed to testify in that regard, such testimony would not have been of any appreciable value under the facts of this case which included only Mr.

Mickelson's general assertions as to the prescription drugs themselves.

[¶ 21] The failure to call an expert was not ineffective assistance. The evidence before the trial court was substantial, and Mr. Mickelson's defense was more than adequately presented by the testimony from his own and the State's witnesses. Rather, Mr. Mickelson has only shown "an unsuccessful defense strategy and is speculating that testimony from an expert would have been a more advantageous strategy." *McCoy v. State,* 886 P.2d 252, 257 (Wyo.1994).

### 2. *Prior Bad Acts Evidence*

[¶ 22] Mr. Mickelson's second claim is that trial counsel introduced harmful evidence when cross-examining witness Vaughn Neubauer. Mr. Neubauer, who was present in the bar on the afternoon of this incident, previously represented Mr. Mickelson in other alcohol-related offenses. On cross-examination, trial counsel asked Mr. Neubauer whether Mr. Mickelson had been in trouble before this incident. Mr. Neubauer then proceeded to confirm that he represented Mr. Mickelson on DUI charges and a domestic violence matter. Prior to trial, no motion was filed attempting to exclude or limit in any way Mr. Neubauer's testimony as it may have related to attorney-client privilege. He was called and cross-examined on his knowledge of Mr. Mickelson's drinking and criminal history. This was not oversight by defense counsel. Based on the questions asked at trial, it is clear that the eliciting of these prior events was part of a focused strategy trial counsel hoped would give weight to his defense that he was so far under the influence that he could not form specific intent. That strategy was further evident when Mr. Mickelson testified about this history on direct examination.

[¶ 23] Even if these inquiries went too far, or the strategy could be criticized in hindsight, there was no prejudice.[3] It is

---

3. Wyoming Rule of Evidence 404(b) reads:
   (b) *Other crimes, wrongs, or acts.*—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other pur-

poses, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the

presumed on appeal in cases tried without a jury "that the court in reaching its decision disregarded improperly admitted evidence unless the record affirmatively shows that the trial court's decision was influenced by improperly admitted evidence." *Feeney v. State*, 714 P.2d 1229, 1230 (Wyo.1986) (stating the trial judge is able to "sift the wheat from the chaff"); *accord Gailey v. State*, 882 P.2d 888, 892–93 (Wyo.1994).

### 3. *Decision Not to Call a Witness*

**[16, 17]** [¶ 24] Next, Mr. Mickelson argues that trial counsel was ineffective for not calling Paul Cortez as a witness.

The charge that a defendant was denied effective counsel because his attorney did not call witnesses has often been raised. The decision not to call witnesses is a strategic choice. *Amin* [*v. State,*] 811 P.2d [255,] 261–62 [ (Wyo.1991) ]; *Laing v. State*, 746 P.2d 1247, 1250 (Wyo.1987). In order to successfully show ineffective assistance of counsel, the appellant must present the facts about which the proposed witnesses would have testified. *Campbell* [*v. State,*] 728 P.2d 628 [ (Wyo.1986) ]. The decision whether to call witnesses is normally within the judgment of counsel and will rarely be second-guessed through appellate hindsight. *State v. Onishi*, 64 Haw. 62, 636 P.2d 742, 744 (1981).

*Brock v. State*, 2012 WY 13, ¶ 13, 272 P.3d 933, 937 (Wyo.2012) (quoting *Eustice v. State*, 11 P.3d 897, 904 (Wyo.2000)) (alterations in original).

[¶ 25] Mr. Cortez, who wrote a letter in support of Mr. Mickelson for sentencing, was apparently available at trial even though he was not listed on Mr. Mickelson's pretrial memorandum. Mr. Cortez was with Mr. Mickelson on the day prior to the incident and the morning of the incident. He was not, however, at the Third Street Bar on November 3, 2010. Mr. Mickelson argues that Mr. Cortez would have supported Mr. Mickelson's testimony that he was "blacked out" and therefore added credibility to Mr. Mickelson's testimony. This overlooks the

fact that Mr. Cortez was not present at the time of the incident. Based on that fact, trial counsel's reasonable and focused strategy was not ineffective.

### 4. *Failure to Object to Testimony*

[¶ 26] Finally, Mr. Mickelson argues that trial counsel was ineffective by failing to object to the opinion testimony given by Ms. Tonille and Mr. Groshart. Mr. Mickelson must show that the evidence was objectionable and that the lack of objection was not reasonable trial strategy. *Mapp v. State*, 953 P.2d 140, 144–45 (Wyo.1998). As set forth in detail above, the testimony of Ms. Tonille and Mr. Groshart was not objectionable, and thus his failure to object could not be and was not ineffective.

### CONCLUSION

[¶ 27] The testimony of Ms. Tonille and Mr. Groshart regarding Mr. Mickelson's level of intoxication was properly admitted and considered by the trial court. Further, Mr. Mickelson was not denied effective assistance of trial counsel, and his conviction is affirmed.

court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Appellant has presented no arguments to this Court that the testimony of Mr. Neubauer violated this rule.