**The STATE of Utah, Plaintiff and Respondent,**

v.

**Marvin Ray WARDLE, Defendant and Appellant.**

**No. 14389.**

Supreme Court of Utah.

May 11, 1977.

---

5. Rule 51, U.R.C.P.; *State v. Kazda*, Utah, 545 P.2d 190 (1976).

Lynn R. Brown, Salt Lake Legal Defender Assn., Salt Lake City, for defendant and appellant.

Vernon B. Romney, Atty. Gen., William W. Barrett, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

MAUGHAN, Justice:

Before us is an appeal from a jury verdict convicting defendant of murder in the second degree. We affirm.

Defendant and the victim, Justin E. Greed, had been friends. In fact, Greed had temporarily lived with defendant for a short period of time. On September 11, 1975, defendant went to Swanee's Lounge, Greed was sitting at the bar. Defendant was upset with Greed for the reason he believed Greed was contributing to defendant's wife's alcohol problem. As defendant sat at the bar, he became increasingly agitated as he looked at Greed. He attempted to provoke Greed by certain comments, but Greed would not respond. He sought out the manager of the establishment and requested Greed be ejected; this was refused. He then threatened an assault upon Greed.

Greed departed, and defendant followed him immediately. After a period of ten minutes, one of the patrons of the bar, expressing concern for Greed, went outside. She looked down an alley adjoining the bar premises and observed defendant behind a parked automobile. The patron testified defendant had his hands braced upon the trunk of the vehicle and was jumping up and down on something. She returned to the bar and informed a male patron of her observations.

Defendant entered the bar and told the barmaid to summon an ambulance. In the interim two male patrons went to investigate and discovered Greed, lying unconscious, behind the automobile. Greed was bleeding from the mouth, nose, and ears, and his breathing was labored. One of the patrons remained with the victim until the paramedics arrived.

Mr. Greed was transported to the hospital. His hip and jaw were fractured, and he had multiple rib fractures which impaired breathing. His low blood pressure indicated internal bleeding. Emergency surgery was performed to remove his ruptured gall bladder and spleen and to repair his lacerated liver and other internal organs. A piece of his dental plate was lodged in his esophagus. Mr. Greed was removed from surgery to the intensive care unit where he died on September 14, 1975. The state medical examiner, who conducted a post mortem, testified multiple blunt blows to Mr. Greed's body caused his death.

On appeal defendant contends the evidence was insufficient to sustain a conviction of murder in the second degree. Specifically, he asserts there was insufficient evidence to establish the requisite intent to support the conviction. He argues the evidence did not establish (1) he intentionally or knowingly caused the victim's death, Sec. 76-5-203(1)(a), or (2) he intended to cause serious bodily injury to another, Sec. 76-5-203(1)(b), or (3) he acted under circumstances evidencing a depraved indifference to human life, Sec. 76-5-203(1)(c).[1]

■ To sustain his argument defendant cites a line of authority to the effect that since death is not the natural or probable result of a blow with the hand, no intent to kill or malice will, under ordinary circumstances, be inferred, although death results from an assault thus committed.[2] However, the exception to this rule is that when the assault from which death resulted was intended with such circumstances of vio-

1. The terminology of this section indicates an implied malice, viz., when the circumstances attending the killing show an abandoned and malignant heart.

2. See 22 A.L.R.2d 854, Anno.: Inference of malice or intent to kill where killing is by a blow without a weapon, § 2, p. 857 and § 4, p. 868.

lence, excessive force, or brutality, an intent to kill or malice may be inferred.[3]

The controlling principles are cited and applied in *Pine v. People*,[4] wherein the court stated that although ordinarily a mere blow with the fist does not imply malice or an intent to kill, this is not a hard and fast rule. An assault with hands or feet may support a conviction of murder in the second degree, depending upon the circumstances.

It is well to note, however, that ours is not just a case where the defendant struck Vigil with his fists. If that were the situation, then it might well be argued that under the authorities cited the conviction for murder would have to be reversed. But in the instant case there was much evidence that as Vigil lay unconscious on the floor, the defendant jumped astride and bounced Vigil's head on and off the concrete floor about three times. . . . Under such circumstances we deem the evidence to be sufficient to support the verdict of the jury . . . .[5]

■ In the instant case, there were sufficient facts in the record to support a determination of aggravating circumstances; therefore, there was a question of fact for the jury as to defendant's intention to kill or to cause serious bodily injury, or his implied malice.[6]

■ Defendant contends the trial court committed prejudicial error by permitting testimony concerning defendant's request that his interrogation be terminated. This point is without merit, since defendant's description and characterization of the incident is factually inaccurate.

On September 15, defendant was informed by his wife that the victim was beaten worse than defendant believed. Defendant requested an attorney. Officer Peterson responded that the only attorney the police could procure was the county attorney. Defendant represented any attorney would do. A deputy county attorney responded to the officer's request. Defendant informed the attorney he had some questions. The attorney responded he could not advise him, since he was a prosecutor. The interview was concluded, and defendant, the police officer, and the attorney emerged from the conference room and strolled toward the booking area of the jail. At that point defendant stated he would have to be quick to kick someone without their seeing it. He further stated:

I hit him, knocked him on the back of the car, he slid off onto the ground. I picked him up and hit him four or five more times; he must have been hit by a car after that.

■ A review of the record does not reveal that the police officer or county attorney testified that defendant requested the interrogation be discontinued. The testimony was highly relevant as to the circumstances at the time of this spontaneous admission and would aid the jury in determining what weight should be accorded to defendant's statement.

■ Finally, defendant contends that it was prejudicial error for the trial court to allow introduction of any incriminating statements of defendant which occurred subsequent to his request for counsel.

The record clearly establishes that defendant was given his "Miranda" rights on more than one occasion. Furthermore, he was not interrogated at all after he requested counsel. His claim, in essence, is that any spontaneous expression of an accused should be suppressed after a request for counsel on the ground that he was deprived of the advice of counsel regarding his statements.

Defendant had been fully apprised of his right to remain silent and the consequences

---

**3.** Id. § 3, p. 861, § 5, p. 871; *State v. Jensen*, 120 Utah 531, 536, 236 P.2d 445 (1951).

**4.** 168 Colo. 290, 455 P.2d 868 (1969).

**5.** At pp. 869–870 of 455 P.2d; also see *People v. Beyea*, 38 Cal.App.3d 176, 189, 113 Cal.Rptr. 254, 261 (1974).

**6.** See *Coca v. State*, Wyo., 423 P.2d 382, 387 (1967).

of any statements. His specific request for counsel had been made only minutes prior to his statement. Under such circumstances, he cannot be deemed to have been deprived of his right to counsel.

ELLETT, C. J., CROCKETT and WILKINS, JJ, and J. ROBERT BULLOCK, District Judge, concur.

HALL, J., does not participate herein.