# IN THE SUPREME COURT, STATE OF WYOMING

## 2014 WY 136

OCTOBER TERM, A.D. 2014

October 31, 2014

RICHARD CAMERON WILKERSON,

Appellant
(Defendant),

v.

S-13-0230

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Johnson County*
*The Honorable William J. Edelman, Judge*

*Representing Appellant:*

Richard R. Jamieson, Jamieson & Robinson, LLC, Casper, Wyoming; John P. LaBuda and Rives T. White, LaBuda Law Office, PC, Pinedale, Wyoming; Kyle A. Ridgeway, Williams, Porter, Day & Neville, PC, Casper, Wyoming; John H. Robinson, Jamieson & Robinson, LLC, Jackson, Wyoming. Argument by Mr. Robinson.

*Representing Appellee:*

Peter K. Michael, Attorney General; David L. Delicath, Deputy Attorney General; Jenny L. Craig, Senior Assistant Attorney General; Amy A. Pauli, Assistant Attorney General. Argument by Ms. Pauli.

*Before BURKE, C.J., and HILL, KITE\*, DAVIS, and FOX, JJ.*

*\*Chief Justice at time of oral argument.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BURKE, Chief Justice.**

[¶1]   Appellant, Richard Cameron Wilkerson, challenges his conviction for second-degree murder for the killing of Brian Newman.  He contends the district court erred in instructing the jury on the malicious intent element of second-degree murder.  Mr. Wilkerson further claims there was insufficient evidence to support his conviction.  We conclude that the jury instructions regarding the definition of malice were in accord with our precedent.  However, we also conclude that the definition of malice contained in our precedent does not satisfy the malicious intent requirement of second-degree murder under Wyo. Stat. Ann. § 6-2-104.  Accordingly, we must overturn that precedent and reverse Mr. Wilkerson's conviction.

## *ISSUES*

[¶2]   Appellant presents five issues.  Our resolution of this case makes it unnecessary for us to consider all of the issues presented.  We rephrase the issues and discuss them in the following order:

> 1.  In order to convict a defendant of second-degree murder, the State must prove that the defendant acted "purposefully and maliciously." Was the jury properly instructed regarding the meaning of the term "malice?"
>
> 2.  Was sufficient evidence presented to sustain a conviction for second-degree murder?[1]

## *FACTS*

[¶3]   At approximately 7:00 p.m. on the night of September 21, 2012, the decedent,

---

[1] Mr. Wilkerson also presents the following issues, which we do not address:

> 1.  Did the district court abuse its discretion in refusing to give the Appellant's proposed spoliation instruction?
>
> 2.  Did the jury instructions that were ultimately given by the district court violate Appellant's due process right to have the jury instructed on his theory of the case?
>
> 3.  Does this Court's precedent – that presentation of evidence by a defendant waives his Rule 29 Motion for Judgment of Acquittal at the close of the State's case-in-chief – violate the Fifth Amendment's Double Jeopardy Clause?

1

Brian Newman, arrived at the Century Club bar in Buffalo, Wyoming, after consuming several beers at home. Mr. Newman spent the remainder of the evening drinking beer and shots of Jägermeister, and was still at the bar when Mr. Wilkerson arrived with a group of friends at approximately 1:00 a.m. Although not invited, Mr. Newman attempted to join Mr. Wilkerson's party at a table in the bar by pulling up a stool and making room for himself. Mr. Wilkerson ordered a round of drinks for his friends at the table, but did not buy a drink for Mr. Newman. Mr. Newman became "mouthy and rude" when he did not receive a drink, and proceeded to insult several of the women in Mr. Wilkerson's party, telling them that they were "dirty whores" and "sluts," and that they were at the bar to "prostitute [themselves]." After a heated exchange between Mr. Wilkerson and Mr. Newman, several members of Mr. Wilkerson's group told Mr. Newman to leave the table, and the bartender eventually intervened and told Mr. Newman to sit at the bar.

[¶4]    Following the initial altercation between Mr. Wilkerson and Mr. Newman, Mr. Wilkerson was led to the dance floor by another bar patron who noticed that he was pacing and clenching his fists. Mr. Wilkerson left the dance floor after less than a minute, walked over to where Mr. Newman was seated at the bar, and punched Mr. Newman on the right side of his head. The punch knocked Mr. Newman off of his barstool and he struck his head on the bar ledge or a bar stool as he fell to the floor. While Mr. Newman lay unconscious on the floor, Mr. Wilkerson kicked or stomped in his general direction and said "talk shit now, bitch." Emergency personnel subsequently arrived and transported Mr. Newman to the hospital, where he was pronounced dead. Mr. Wilkerson was found at his sister's house and placed under arrest. A subsequent autopsy revealed that the cause of Mr. Newman's death was "massive, fresh, acute bleeding into [Mr. Newman's] head that happened when he tore blood vessels from the fall to the ground, hitting his head after he was punched." The coroner's report indicated that Mr. Newman had a blood alcohol content of .226% at the time of his death.

[¶5]    As part of its investigation of the incident, the Buffalo Police Department obtained warrants to gather the clothing and shoes worn by Mr. Wilkerson at the time of the altercation, as well as a sample of Mr. Wilkerson's blood. Based on witness statements that Mr. Wilkerson had kicked or stomped in the general direction of Mr. Newman after he was knocked to the ground, the police submitted Mr. Wilkerson's shoes to the State Crime Laboratory for DNA testing. The testing revealed no evidence of Mr. Newman's DNA on the shoes. At the request of the coroner, Mr. Newman's hands were bagged to preserve potential DNA evidence. The State, however, did not request DNA testing of Mr. Newman's hands.

[¶6]    On September 23, 2012, the State charged Mr. Wilkerson with second-degree murder under Wyo. Stat. Ann. § 6-2-104 and § 6-10-102. A six-day jury trial began on April 15, 2013. At the close of the State's case-in-chief, Mr. Wilkerson moved for a judgment of acquittal pursuant to W.R.Cr.P. 29(a). The district court denied

2

Mr. Wilkerson's motion. Mr. Wilkerson again moved for a judgment of acquittal after the close of the defense's case, after the close of the State's rebuttal, and after the case was submitted to the jury. Those motions were also denied.

[¶7] After the close of evidence, Mr. Wilkerson submitted a supplemental set of proposed jury instructions. Two of those instructions attempted to define the "malice" element of second-degree murder:

> LADIES AND GENTLEMEN OF THE JURY:
>
> The definition of "malice" requires proof of either:
>
> a. actual intent to cause the particular harm which is produced or harm of the same general nature; or
>
> b. the wanton and willful doing of an act with awareness of [a] plain and strong likelihood that such harm may result.
>
> LADIES AND GENTLEMEN OF THE JURY:
>
> The striking of a blow with the fist on the side of the face or head is not likely to be attended with dangerous or fatal consequences, and no inference of malice is warranted by such proof.

The district court rejected the proposed instructions, stating that they did not accurately reflect the status of the law in Wyoming. Instead, the court gave the following instruction relating to malice, modeled on Wyoming Criminal Pattern Jury Instruction 21.01D2:

> INSTRUCTION NO. 8
>
> The term malice means that the act(s) constituting the offense charged was/were done intentionally, without legal justification or excuse or that the act(s) was/were done in such a manner as to indicate hatred, ill will, or hostility towards another.
>
> "Maliciously" means acting in the state of mind in which an intentional act is done without legal justification or excuse. The term "maliciously" conveys the meaning of hatred, ill will, or hostility toward another.

3

Mr. Wilkerson also submitted a proposed instruction relating to the State's alleged failure to preserve potential DNA evidence on Mr. Newman's hands. That instruction, which stated that the failure to preserve evidence by a party may give rise to an unfavorable inference against that party, was also rejected by the district court. After deliberating, the jury found Mr. Wilkerson guilty of second-degree murder, and the court sentenced Mr. Wilkerson to 20 to 40 years in prison. Mr. Wilkerson timely filed this appeal.

## *DISCUSSION*

[¶8]    In order to resolve Mr. Wilkerson's first claim of error, we must determine the meaning of the term "maliciously" as that term is used in Wyo. Stat. Ann. § 6-2-104 (LexisNexis 2011), Wyoming's second-degree murder statute. That issue presents a question of law which we review *de novo*. *See*, *e.g.*, *Kammerer v. State*, 2014 WY 50, ¶ 5, 322 P.3d 827, 830 (Wyo. 2014). Under Section 6-2-104, "whoever purposely and maliciously, but without premeditation, kills any human being is guilty of murder in the second degree . . . ." As noted previously, the district court instructed the jury on the element of malice as follows:

> The term malice means that the act(s) constituting the offense charged was/were done intentionally, without legal justification or excuse or that the act(s) was/were done in such a manner as to indicate hatred, ill will, or hostility towards another.
>
> "Maliciously" means acting in the state of mind in which an intentional act is done without legal justification or excuse. The term "maliciously" conveys the meaning of hatred, ill will, or hostility toward another.

Unquestionably, this instruction provides a very low threshold of proof for conviction. Under this instruction, a defendant can be convicted of second-degree murder if the jury is convinced that the act which caused the victim's death was purposefully done "without legal justification or excuse." A defendant could also be convicted if the jury determines that the act was "done in such a manner as to indicate hatred, ill will, or hostility towards another." The State need not prove both elements in order to convict under this instruction.

[¶9]    Mr. Wilkerson objected to the instruction and proposed an instruction that is at the opposite end of the spectrum. The instruction proposed by Mr. Wilkerson would have required proof of "actual intent to cause the particular harm which is produced" or alternatively, "the wanton and willful doing of an act with awareness of [a] plain and strong likelihood that such harm may result." Essentially, Mr. Wilkerson's proposed instruction requires the State to prove that Mr. Wilkerson acted with intent to kill or with

4

awareness that death was likely to result from his actions. We must determine if either instruction satisfies the requirements of Wyo. Stat. Ann. § 6-2-104.

**History of Second-Degree Murder in Wyoming**

[¶10]  We begin our analysis with a historical review of the law relating to second-degree murder in Wyoming. At the time of adoption of Wyoming's territorial criminal code, in 1869, the code provided that "[a]ny person who shall purposely and maliciously, but without deliberation and premeditation, kill another . . . shall be deemed guilty of murder in the second degree." 1876 Compiled Laws of Wyoming ch. 35, § 16. Early decisions from this Court interpreted the statute to require proof of the defendant's intent to kill. For example, in *Ross v. State*, 8 Wyo. 351, 384-385, 57 P. 924, 932 (1899), this Court stated that murder committed with "a distinctly formed intention to kill, not in self-defense, and without adequate provocation," is "only murder in the second degree, which must be done purposely and maliciously, that is, it must be done with the intent to kill and with malice, or else it is not even murder in the second degree." *See also Parker v. State*, 24 Wyo. 491, 502, 161 P. 552, 555 (1916) (a homicide in which "the intention to kill was present in the mind of defendant at the time the act was committed . . . under our statute would constitute murder in the second degree"). Intent to kill continued to be an element of second-degree murder in Wyoming for over a century. In *Goodman v. State*, 601 P.2d 178, 186-187 (Wyo. 1979), we approved of jury instructions that required the State to prove "the essential element of intention to kill" as an element of second-degree murder, stating that the instructions were "correct and complete in their statement of the pertinent law."

[¶11]  In 1983, Wyoming's Criminal Code was revised and modernized, but the second-degree murder statute was retained without change:

> The wording of the homicide statutes in Wyoming was not substantially changed when the legislature revised the criminal code in 1983. The criminal code revision subcommittee of the Joint Judiciary Interim Committee, in its 1981 first draft, proposed to combine first-degree and second-degree murder into one offense. The subcommittee was heavily criticized for its proposal, because the draft, if enacted, would destroy 90 years of Wyoming case law in the area of homicide. The subcommittee subsequently chose to retain the existing second-degree murder statute without change.

*Crozier v. State*, 723 P.2d 42, 51 (Wyo. 1986). Three years after the legislature's adoption of the revised criminal code, however, our decision in *Crozier* held that intent to kill was not a necessary element of second-degree murder.

5

*Crozier v. State*

[¶12]  In *Crozier*, 723 P.2d at 46, the defendant was convicted of second-degree murder after he strangled a six-year-old boy.  At trial, the defendant introduced evidence that he was intoxicated at the time of the murder.  *Id.*, 723 P.2d at 50-51.  Over the defendant's objection, the trial court instructed the jury that voluntary intoxication was not a defense to second-degree murder based on the conclusion that second-degree murder was not a specific intent crime.  *Id.*, 723 P.2d at 51.  The defendant appealed, and we upheld the trial court's decision.  Our analysis examined the meaning of the terms "purposely" and "maliciously," as used in Wyoming's second-degree murder statute.  In discussing the element of malice, we noted that in North Carolina, which had adopted a definition of second-degree murder similar to Wyoming's, malice may be either express or implied. *Id.*, 723 P.2d at 53.  We quoted from the North Carolina Supreme Court's decision in *State v. Wilkerson*, 247 S.E.2d 905, 917 (N.C. 1978), which defined "malice" broadly as "wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty . . . deliberately bent on mischief."  Ultimately, we concluded that "malice" was a form of general, rather than specific, intent.  *Crozier*, 723 P.2d at 56.

[¶13]  We further concluded that the term "purposely," as used in Wyoming's second-degree murder statute, was a general intent element that "describes the act to be committed and not an intention to produce a desired, specific result."  *Id.*, 723 P.2d at 54. Accordingly, in a departure from our precedent, we held that the statute did not require a specific intent to kill.  *Id.*, 723 P.2d at 56.  Because we concluded that neither "maliciously" nor "purposely" denoted a specific intent crime, we concluded the district court had correctly instructed the jury that voluntary intoxication is not a defense to second-degree murder.  *Id.*

[¶14]  Since our decision in *Crozier*, we have adhered to the conclusion that the term "purposely" in Wyoming's second-degree murder statute "requires only that the State prove the appellant ***acted*** purposely, not that he ***killed*** purposely."  *Butcher v. State*, 2005 WY 146, ¶ 20, 123 P.3d 543, 550 (Wyo. 2005) (emphasis in original).  Further, we have expanded the definition of malice to include not only acts that are committed with "hatred, ill will, or hostility," but also, alternatively, acts that are committed "without legal justification or excuse."  *Id.*, ¶ 24, 123 P.3d at 551.  Notably, this alternative definition of malice, which was not mentioned in *Crozier*, was adopted from a case addressing the malice requirement contained in Wyo. Stat. Ann. § 6-3-101, Wyoming's first-degree arson statute.  In *Keats v. State*, 2003 WY 19, ¶¶ 5-6, 64 P.3d 104, 106 (Wyo. 2003), the defendant was convicted of first-degree arson for starting several fires in his home during a standoff with the police.  Addressing the defendant's challenge to the jury instructions, we concluded that, in the context of Wyoming's arson statute, the requirement of malice is satisfied where the State proves either that the defendant acted

"without legal justification or excuse" or that the defendant acted with "ill will and hostility." *Id.*, ¶ 33, 64 P.3d at 114. Both the facts of *Keats* and the discussion in that case indicate that this alternative definition of "malice" would be limited to cases applying Wyoming's arson statute. *Id.*, ¶¶ 5, 6, 28, 64 P.3d at 106, 112-113. Indeed, we quoted the following commentary noting that, outside of the context of first-degree arson, malice requires an absence of legal justification or excuse ***in addition*** to "an intent to cause a particular harm or the 'wanton and [willful] doing of an act with awareness of a plain and strong likelihood that such harm may result'":

> In his analysis of the revised criminal code that included the new arson statute, Professor Theodore E. Lauer concluded that the word "maliciously" may well be surplusage in the statute:
>
>> The word "maliciously" in first-degree arson is probably unnecessary. While traditionally arson has required that a fire be "willfully and maliciously" started, the term "maliciously" has meant something less than intentionally. *See* R. Perkins & R. Boyce, Criminal Law 856-61 (3d ed.1982), where a malicious state of mind is said to be one wherein there is an absence of justification, excuse or mitigation, and either an intent to cause a particular harm or the "wanton and [willful] doing of an act with awareness of a plain and strong likelihood that such harm may result." *Id.* at 860. But where, as in first degree arson, the act of starting the fire must be done "with intent to destroy or damage an occupied structure," it is clear that only an intent to cause the harm will suffice, and a knowing or reckless state of mind is not enough.
>
> Theodore E. Lauer, *Goodbye 3-Card Monte: The Wyoming Criminal Code of 1982*, XIX Land & Water L. Rev. 509, 511 n.12 (1984).

*Keats*, ¶ 28, 64 P.3d at 112-113. Nonetheless, just two years later, in *Butcher*, ¶ 24, 123 P.3d at 550-51, we indicated that this alternative definition of malice also applied in cases arising under Wyoming's second-degree murder statute. In *Butcher*, we concluded that the trial court had erred in requiring the State to satisfy the element of malice by proving both that the defendant acted with "hatred, ill will, or hostility," and "without legal justification or excuse." *Id.* (noting that "Any error in the present case, however, inured to the benefit of the appellant because the definition given required the State to prove both an intentional act done without legal justification or excuse, and hatred, ill will, or

hostility").

### *Lopez v. State*

[¶15] In his review of Wyoming's Criminal Code, conducted fifteen years after its revision, Professor Lauer noted that, as a result of the decision in *Crozier*, "any act done maliciously and willfully which causes the death of another person is second degree murder. Thus, striking or shoving another intentionally and with malice but without intent to kill, will be second degree murder if the victim dies from the consequences of the blow or shove." Theodore E. Lauer, *The Wyoming Criminal Code Revisited: Reflections After Fifteen Years*, 33 Land & Water L. Rev. 523, 552 (1998). According to Professor Lauer's review, "*Crozier* requires rethinking of Wyoming's law of homicide. By doing away with the intent to kill in second degree murder, the Wyoming Supreme Court may have in fact enlarged the reach of second degree murder, transferring some killings from the category of manslaughter to that of second degree murder." *Id.* at 553. That *Crozier* expanded the scope of second-degree murder in Wyoming seems to have been confirmed by *Lopez v. State*, 2004 WY 28, 86 P.3d 851 (Wyo. 2004), a case in which the defendant was found guilty of second-degree murder after causing the victim's death by delivering an open-hand slap to his head. In determining that there was insufficient evidence to support the conviction in *Lopez*, we relied on precedent from Utah and Colorado holding that malice, in the context of second-degree murder, requires a showing of depraved indifference to the value of human life. *Id.*, ¶¶ 21-23, 86 P.3d at 858-859.

[¶16] The facts of *Lopez* are relatively straightforward. Lopez and the victim were "good friends" and Lopez was aware that the victim suffered from chronic alcoholism. During a night of drinking together, Lopez "became upset that [the victim] was drinking whiskey and told him to stop drinking before he killed himself." *Id.*, ¶ 4, 86 P.3d at 855. The victim pushed Lopez, and Lopez then slapped the victim "on his head with an open hand and pushed him back down onto a couch." *Id.* The victim died approximately 34 hours later from a blood clot caused by the slap, and it was subsequently determined that the victim "had numerous health problems that made him susceptible to death by the slap." *Id.*, ¶ 8, 86 P.3d at 856. After a jury trial, Lopez was found guilty of second-degree murder.

[¶17] On appeal, Lopez argued that the evidence was not sufficient to demonstrate that he had acted maliciously. We began our analysis by setting forth the meanings of the terms "purposely" and "maliciously," following the definitions set forth in *Crozier*. Notably, in contrast to *Keats* and *Butcher*, our discussion did not indicate that the element of malice could be satisfied by a showing that the defendant acted "without legal justification or excuse:"

When used as an element of second degree murder,

8

"purposely" means intentionally or deliberately. *State v. Keffer*, 860 P.2d 1118, 1138 (Wyo. 1993). "As so used in the second degree murder statute, 'purposely' is a general-intent element that 'describes the act to be committed and not an intention to produce a desired, specific result.'" *Id.* (quoting *Crozier v. State*, 723 P.2d 42, 54 (Wyo. 1986)). Because second degree murder is a general-intent crime, the evidence to support a conviction for second degree murder must demonstrate "the defendant acted with deliberation, but it does not require evidence that he deliberately killed." *Keffer*, 860 P.2d at 1138 (quoting *Ramos v. State*, 806 P.2d 822, 830 (Wyo. 1991)). *See also Young v. State*, 849 P.2d 754, 761-62 (Wyo. 1993). "It follows that 'purposely' distinguishes the act from one committed 'carelessly, inadvertently, accidentally, negligently, heedlessly or thoughtlessly.'" *Keffer*, 860 P.2d at 1138 (quoting *Dean v. State*, 668 P.2d 639, 642 (Wyo. 1983) (quoting *Matter of Adoption of CCT*, 640 P.2d 73, 76 (Wyo. 1982))).

Second degree murder requires proof of express, implied, constructive or legal malice. *Keffer*, 860 P.2d at 1138-39. The State must prove circumstances from which legal malice might be justly inferred. *Nunez v. State*, 383 P.2d 726, 729 (Wyo. 1963). This form of homicide is a killing that cannot be justified under the law of self-defense, and requires murderous *mens rea*. *See Keats v. State*, 2003 WY 19, ¶ 28, 64 P.3d 104, ¶ 28 (Wyo. 2003) ("maliciously" gives a statute "a *mens rea* element, without which it would reach innocent conduct"). The required state of mind for a murder conviction is that degree of mental disturbance or aberration of the mind that is wicked, evil and of unlawful purpose, or of that willful disregard of the rights of others which is implied in the term malice. *Keffer*, 860 P.2d at 1139. Where malice is absent, the crime is manslaughter even if the act that caused the death was done purposely. *Id.*

*Lopez*, ¶¶ 18-19, 86 P.3d at 857-858. Despite this definition of malice, however, in determining whether Lopez had acted with the requisite malice, we relied on precedent from Utah and Colorado indicating that "since death is not the natural or probable result of a blow with the hand, no malice will ordinarily be inferred although death results from the assault." *Id.*, ¶ 22, 86 P.3d at 858.

In the past, we have upheld murder convictions where

9

death was not caused by a weapon but only with fists. *Dryden v. State*, 535 P.2d 483, 495-96 (Wyo. 1975); *see also Coca v. State*, 423 P.2d 382, 387-88 (Wyo. 1967). Those cases are distinguishable from this case because, in those cases, numerous vicious blows by a fist were inflicted. *Id.* Here, we have one open hand slap, not a blow or blows by a fist. In Wharton's Criminal Law, the statement is made that malice is not to be inferred by a blow with the hand. 2 Charles E. Torcia, *Wharton's Criminal Law* § 141, at 252, 255 (15th ed. 1994). LaFave makes the general statement that it would be ridiculous to find murder because of a slap. 2 Wayne R. LaFave, *Substantive Criminal Law* § 14.2(b), at 432 (2d ed. 2003). In an overview of the general state of law, it has been said:

> Since death is not the natural or probable result of a blow with the hand, it seems that no intent to kill will, under ordinary circumstances, be inferred, although death results from an assault thus committed.

M.C. Dransfield, Annotation, *Inference of Malice or Intent to Kill Where Killing is by Blow Without Weapon*, 22 A.L.R.2d 854, at 857 (1952). Death caused by the repeated use of fists or feet or boots does present evidence of malice. "[I]n appropriate cases, generally involving big men attacking small, frail men or women or children, **and** generally involving the repeated use of hands and feet, an inference of an intent to kill may properly be drawn." LaFave, *supra*, § 14.2(b), at 432 (emphasis added).

Both Colorado and Utah have recognized that there is a line of authority that since death is not the natural or probable result of a blow with the hand, no malice will ordinarily be inferred although death results from the assault. *State v. Wardle*, 564 P.2d 764, 765-66 (Utah 1977); *Pine v. People*, 168 Colo. 290, 455 P.2d 868, 869 (1969). These courts reason that the malice necessary to constitute a murder is presumed where the act is deliberate and is likely to be attended with dangerous or fatal consequences. Death or great bodily harm must be the reasonable or probable consequence of the act to constitute murder. The striking of a blow with the fist on the side of the face or head is not likely to be attended with dangerous or fatal consequences, and no inference of

10

malice is warranted by such proof. *Id.* Both states, however, have recognized that an assault with hands or feet may support a conviction for second degree murder where the circumstances show that death resulted from a violent or brutal beating or blows inflicted to victims susceptible because of age or known infirmity. *Id.* Based on this precedent concerning fists, we believe it reasonable to conclude that these courts would not permit an inference of malice because a slap was delivered by an open hand.

We observe then that, generally, evidence that death caused by an open hand slap without more is insufficient evidence of malice and, therefore, is not murder.

*Lopez*, ¶¶ 21-23, 86 P.3d at 858-859. Ultimately, we concluded that "Lopez acted purposely; however, the only evidence of malice is the single open hand slap, and we agree with long standing precedent that, without more, malice cannot be inferred from this minimal act. We hold that the evidence is insufficient as a matter of law that Lopez acted maliciously." *Id.*, ¶ 24, 86 P.3d at 859. Importantly, however, the "long standing precedent" we relied on in reaching this conclusion, including the decisions in *Wardle* and *Pine*, indicates that malice, in the context of second-degree murder, requires a showing of depraved indifference to the value of human life.

### *State v. Wardle* **and** *Pine v. People*

[¶18] In *Wardle*, 564 P.2d 764, a case decided by the Utah Supreme Court, the victim died after the defendant repeatedly jumped on the victim. The question on appeal was whether the defendant's conduct could support an inference that the defendant acted with one of the three mental states required under Utah's second-degree murder statute: intent to kill, intent to cause serious bodily injury, or depraved indifference to human life. The court concluded that the defendant's conduct could support an inference of the required mental state, and in doing so, it equated "implied malice" with a mental state exhibiting "a depraved indifference to human life." *Id.*, 564 P.2d at 765 n.1. The court also noted that implied malice was demonstrated, under a more traditional formulation, "when the circumstances attending the killing show an abandoned and malignant heart." *Id.*

[¶19] The same standard is used in Colorado. Although the decision in *Pine* does not define the term "implied malice," contemporaneous decisions from Colorado hold that "implied malice" exists where "circumstances show an abandoned or malignant heart." *See, e.g., People v. Spinuzzi*, 369 P.2d 427, 430 (Colo. 1962); *see also* Eric A. Johnson, *The Crime That Wasn't There: Wyoming's Elusive Second-Degree Murder Statute*, 7 Wyo. L. Rev. 1, 30 (2007). The Colorado Supreme Court has equated this standard to "depraved heart" and "extreme indifference," stating that all three formulations of malice

require an extreme form of recklessness:

> At common law, murder was defined as the unlawful killing of another human being with "malice aforethought." Model Penal Code § 210.2, comment at 13-14 (official draft/rev. comments 1980). There were no degrees of murder at common law; instead, malice was the essential ingredient distinguishing murder from other types of criminal homicide. Quinn, *Homicides Under the Colorado Criminal Code*, 49 Den. L.J. 137, 138 (1972). Over time, the phrase malice aforethought became an arbitrary symbol used by common law judges to signify any of a number of mental states deemed sufficient to support liability for murder. Model Penal Code, *supra* § 210.2, comment at 14. Among the categories was what became known as "depraved-heart murder." *Id.* This label derived from decisions and statutes condemning as murder unintentional homicide under circumstances evincing a "depraved mind" or an "abandoned and malignant heart." *Id.*

> Malice aforethought could be either express or implied. 1 *Warren on Homicide* § 63 (1938 ed.). Malice included more than simply an intent to kill or endanger human life. Quinn, 49 Den. L.J. at 138. Malice could also be found where the killer directed no animosity, enmity, or ill will toward the victim. C. Torcia, 2 *Wharton's Criminal Law* § 137 (14th ed. 1979). In describing the kind of malice which would support a conviction for murder at common law, a number of commentators seized upon the following definition:

>> Malice is not restricted to hatred, spite, or malevolence toward the particular person slain, but also includes that general malignity and reckless disregard of human life proceeding from a heart void of a just sense of social duty and fatally bent on mischief.

> 1 *Warren on Homicide* § 66 at 271. *See also* 2 *Wharton's* §§ 137, 143.

> The essential concept was one of extreme recklessness regarding homicidal risk. Thus, a person might be liable for murder absent any actual intent to kill or injure if he caused

12

the death of another in a manner exhibiting "a wanton and willful disregard of an unreasonable human risk," or, in the confusing elaboration of one court "a wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty." Since "depraved heart" murderers exhibit the same disregard for the value of human life as deliberate or premeditated murderers, they are viewed as deserving of the same serious sanctions.

Examples of the kinds of conduct which would demonstrate "depraved heart" murder at common law include: the firing of a loaded gun, without provocation, into a moving train and the resultant death of an innocent bystander, the discharge of a firearm into a crowd of people, operating a vehicle at high speed, placing obstructions on a railroad track, throwing a heavy piece of timber from a roof onto a crowded street, pointing a revolver loaded with a single cartridge and firing it on the third pull of the trigger during a game of Russian Roulette, firing several shots into a home known to be occupied, intending to shoot over a victim's head in order to scare him, but hitting him by "mistake," and throwing a heavy beer glass at a woman carrying a lighted oil lamp.

*People v. Jefferson*, 748 P.2d 1223, 1226-1227 (Colo. 1988) (some internal citations omitted); *see also* Johnson, 7 Wyo. L. Rev. at 30. Accordingly, in both Utah and Colorado, in order to show malicious intent necessary to second-degree murder, the State must demonstrate that the defendant acted recklessly under circumstances manifesting extreme indifference to the value of human life.

### O'Brien v. State

[¶20] This formulation of malice, requiring extreme indifference to the value of human life, is also the standard set forth in the Model Penal Code, as we have previously noted in *O'Brien v. State*, 2002 WY 63, ¶ 14, 45 P.3d 225, 230-231 (Wyo. 2002). In that case, the defendant and the victim had been driving around in separate cars on the streets of Gillette, Wyoming. *Id.*, ¶ 3, 45 P.3d at 228. After calling out insults to the occupants of the victim's vehicle, the defendant approached the victim in a parking lot. *Id.*, ¶ 4, 45 P.3d at 228. The defendant punched the victim near his left eye, knocking him to the ground. *Id.* The defendant then punched the victim in the head "pretty quick and hard" ten or eleven times while the victim lay unconscious on the ground. *Id.* The victim's friends took him to the emergency room in Gillette, and he was subsequently transported via ambulance to a hospital in Casper to undergo surgery. *Id.*, ¶ 5, 45 P.3d at 228. The

surgeon who operated on the victim observed that he had "a severely fractured and displaced jaw, a condylar fracture, a concussion, and a laceration on the forehead." *Id.* A permanent titanium plate was inserted to repair the victim's fractured jawbone. *Id.*

[¶21] After a jury trial, the defendant was convicted of aggravated assault and battery and was sentenced to three to eight years in prison. *Id.*, ¶ 6, 45 P.3d at 228. On appeal, the defendant argued that the district court erred when it improperly provided the jury with the definition of the term "recklessly" rather than providing the jury with a definition of the term "recklessly under circumstances manifesting extreme indifference to the value of human life," the standard set forth in Wyoming's aggravated assault and battery statute. *Id.*, ¶ 7, 45 P.3d at 228. We agreed with the defendant. We began our analysis by noting that the phrase "extreme indifference" had not been previously defined in Wyoming:

> In many other states, the "extreme indifference" language was preceded by the "depraved heart" and "implied malice" terms to distinguish between homicides such as second degree murder and involuntary manslaughter, and each term was recognized to mean that it contemplated circumstances which make a defendant more blameworthy than recklessness alone. *State v. Boone*, 294 Or. 630, 661 P.2d 917, 920-21 (1983). Wyoming, however, has no previous decisions on the meaning of "extreme indifference" or "depraved heart."

*Id.*, ¶ 13, 45 P.3d at 230. After determining that the legislature, in 1982, had modeled revisions to Wyoming's aggravated assault and battery statute after the Model Penal Code, we relied on the definition of "extreme recklessness" as used in the Code to ascertain legislative intent. Our discussion noted that, under the Model Penal Code's definition of murder, malice requires a special character of recklessness demonstrating extreme indifference to the value of human life:

> In discussing the term "recklessly under circumstances manifesting extreme indifference to the value of human life," the Commentary to the Model Penal Code states that this is a "special character" of recklessness required to elevate assault or battery to aggravated assault or battery and is adopted from the definition of murder found in Section 210.2(1)(b) of the Code. § 211.1(2)(a) cmt. 4, at 189. That discussion states that criminal homicide constitutes murder when it is committed "recklessly under circumstances manifesting extreme indifference to the value of human life." § 210.2(1)(b) cmt. 4, at 21. That Commentary goes on to state that this term is

14

intended to reflect the judgment that there is a kind of reckless homicide that cannot fairly be distinguished in grading terms from homicides committed purposely or knowingly. *Id.* Stating that conduct amounting to a "gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation" is "ordinary recklessness" that would justify a manslaughter conviction, the Commentary observes that

> [i]n a prosecution for murder, however, the Code calls for the further judgment whether the actor's conscious disregard of the risk, under the circumstances, manifests extreme indifference to the value of human life. The significance of purpose or knowledge as a standard of culpability is that, cases of provocation or other mitigation apart, purposeful or knowing homicide demonstrates precisely such indifference to the value of human life. Whether recklessness is so extreme that it demonstrates similar indifference is not a question, it is submitted, that can be further clarified. It must be left directly to the trier of fact under instructions which make it clear that recklessness that can fairly be assimilated to purpose or knowledge should be treated as murder and that less extreme recklessness should be punished as manslaughter.

*Id.* at 21-22. The Commentary then notes that this type of extreme recklessness, formerly known as the so-called "depraved heart" conduct that allowed murder convictions when a defendant killed his friend playing Russian roulette, killed by firing into occupied homes, or killed when he intended to shoot over the head of the victim but missed, would permit a jury to reach the same conclusion under the Code's language. *Id.* at 22-23. It warns, however, that negligent creation of risk of death, regardless of its extravagance or unjustification, cannot be punished as murder. Under Section 210.2(1)(b), the actor must perceive and consciously disregard the risk of death to another before the conclusion of extreme recklessness can be drawn. *Id.* at 27-28.

The Commentaries addressing aggravated assault and battery state that this special character of recklessness, or

15

extreme recklessness, is designed to more severely punish battery where the defendant's state of mind would have justified a murder conviction had his victim not fortuitously lived. § 211.1(2)(a) cmt. 4, at 189. By adopting the Model Penal Code's term, "recklessly," to justify a lesser punishment for assault and battery, the Wyoming Legislature plainly intended to distinguish between "recklessly" and "recklessly under circumstances manifesting extreme indifference to the value of human life" in the same manner as had the Model Penal Code. We, therefore, determine that O'Brien correctly asserts that the jury was not properly instructed when it was provided with the statutory definition of "recklessly" without further proper instruction.

*O'Brien*, ¶¶ 16-17, 45 P.3d at 231-32.

[¶22] With this precedent in mind, we turn to the question of whether the definition of malice set forth in *Crozier,* and subsequently expanded in *Butcher,* adequately describes and delimits the crime of second-degree murder in Wyoming. In answering this question, we are mindful of the doctrine of *stare decisis,*

> . . . the means by which we ensure that the law will not merely change erratically, but will develop in a principled and intelligible fashion. That doctrine permits society to presume that bedrock principles are founded in the law rather than in the proclivities of individuals, and thereby contributes to the integrity of our constitutional system of government, both in appearance and in fact.

*Borns ex rel. Gannon v. Voss*, 2003 WY 74, ¶ 25, 70 P.3d 262, 271 (Wyo. 2003). While this Court has always shown due deference to the doctrine of *stare decisis*, it has also always recognized that *stare decisis* should not be applied blindly and rigidly. "[W]hen governing decisions are unworkable or are badly reasoned, this Court has never felt constrained to follow precedent. *Stare decisis* is not an inexorable command; rather, it is a principle of policy and not a mechanical formula of adherence to the latest decision." *Cook v. State*, 841 P.2d 1345, 1354 (Wyo. 1992) (Golden, J., concurring) (internal citation and quotation marks omitted).

[¶23] Our precedent interpreting "maliciously" in the context of second-degree murder has not been free from criticism. According to a law review article by Professor Eric A. Johnson, entitled *The Crime That Wasn't There: Wyoming's Elusive Second-Degree Murder Statute*, "Neither the requirement that the defendant 'purposely' perform the act that causes death nor the requirement that the defendant act with 'hatred, ill will, or

hostility' is sufficiently demanding to mark the boundary of second-degree murder." Johnson, 7 Wyo. L. Rev. at 47. After careful consideration, we are forced to agree with the conclusion that the definition of malice contained in our precedent since *Crozier* does not adequately describe and delimit the crime of second-degree murder. On this point, we agree with Professor Johnson's analysis:

> It can be said of nearly every homicide that the act that caused death was performed either with "hostility or ill will" or without "legal justification or excuse." For starters, the words "hostility" and "ill will" are broad enough to encompass a wide array of innocuous conduct. A bicyclist who hollers "asshole" at a rude motorist, for example, certainly acts with "hostility," but few of us would be willing to convict the bicyclist of second-degree murder if the motorist, in turning to glare at the bicyclist, were to lose control of his vehicle and suffer a fatal rollover accident. Worse, the alternative criterion of "without legal justification or excuse" is even broader. The phrase "legal justification or excuse" appears to encompass just those situations where, as in cases of self-defense or defense of property, the defendant has some affirmative statutory or common law justification for his actions. But every form of criminal homicide – including negligent homicide – requires that the defendant's act be performed without this sort of justification. This very difficulty was remarked by the Wyoming Supreme Court itself in *Helton v. State*, [73 Wyo. 92, 276 P.2d 434 (Wyo. 1954)] another second-degree murder case:
>
>> While many definitions may be found of "Legal Malice", "Implied Malice" and "Constructive Malice", which say in substance that such malice denotes merely the absence of legal excuse, legal privilege or legal justification, these definitions fail to satisfy when they are placed under the scrutiny of close analysis or of subjective reasoning. In homicide, if the killing be legally excusable, legally privileged or legally justifiable, there can, of course, be no legal conviction of any crime. Conversely, if legal conviction is had, there must be an absence of legal excuse, privilege or justification. Hence, if such definitions are accurate, then in every legal conviction of homicide there would be legal malice, implied malice or constructive malice. This, of course, is not so.

17

Johnson, 7 Wyo. L. Rev. at 22 (footnotes and emphasis omitted).

[¶24] Additionally, we find that our analysis in *O'Brien*, relating to the difference between Wyoming's simple and aggravated assault and battery statutes, leads to a similar conclusion with respect to the distinction between Wyoming's manslaughter and second-degree murder statutes. Under Wyo. Stat. Ann. § 6-2-105, manslaughter, which is a lesser-included offense of second-degree murder, requires a showing that the defendant acted "recklessly."[2] In order to distinguish between manslaughter and second-degree murder, the Wyoming Legislature must have intended to require a more culpable mental state than ordinary recklessness to justify a second-degree murder conviction. The definition of malice set forth in our precedent since *Crozier*, however, does not require a heightened form of recklessness for a conviction of second-degree murder. Indeed, the presence of "hatred, ill will, or hostility" may arguably be demonstrated without a showing of even ordinary recklessness, which raises the possibility that a defendant's mental state may be sufficient to satisfy the requirement of malice under Wyoming's second-degree murder statute, but not the ordinary recklessness required for manslaughter. Accordingly, we find that the legislature could not have intended the term "maliciously," as used in Wyoming's second-degree murder statute, to require a mental state reflecting mere "hatred, ill will, or hostility" or the mere absence of "legal justification or excuse."

[¶25] As we have previously noted, the United States Supreme Court has said that a penal statute must "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Griego v. State*, 761 P.2d 973, 975 (Wyo. 1988) (quoting *Kolender v. Lawson*, 461 U.S. 352, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983)). The same principle applies to jury instructions. The purpose of jury instructions is to "provide the jury with a foundational legal understanding to enable a reasoned application of the facts to the law." *Walker v. State*, 2013 WY 58, ¶ 31, 302

---

[2] Wyo. Stat. Ann. § 6-2-105(a) provides as follows:

**§ 6-2-105. Manslaughter; penalty.**

(a) A person is guilty of manslaughter if he unlawfully kills any human being without malice, expressed or implied, either:

(i) Voluntarily, upon a sudden heat of passion; or

(ii) Involuntarily, but recklessly except under circumstances constituting a violation of W.S. 6-2-106(b).

P.3d 182, 191 (Wyo. 2013). In order to support a reliable verdict, it is crucial that the trial court correctly state the law and adequately cover the relevant issues. *Id.* Ultimately, the test of adequate jury instructions is "whether the instructions leave no doubt as to the circumstances under which the crime can be found to have been committed." *Id.* (quoting *Burnett v. State*, 2011 WY 169, ¶ 14, 267 P.3d 1083, 1087 (Wyo. 2011)).

[¶26] As our discussion indicates, Wyoming precedent defining the malice element of second-degree murder since *Crozier*, which eliminated the requirement of an intent to kill – a requirement that we do not resurrect by this decision – greatly expanded the scope of second-degree murder. Ultimately, we are forced to conclude that the definition of malice set forth in *Crozier* and its progeny does not provide a meaningful distinction between the mental states necessary for a conviction of second-degree murder and manslaughter. Indeed, as indicated by Professor Johnson's analysis, the elements of second-degree murder as set forth in our precedent and instructed in this case would encompass nearly every form of criminal homicide. Accordingly, we are unable to conclude that jury instructions allowing the State to prove malice merely by showing that the defendant acted with "hatred, ill will, or hostility," *or* "without legal justification or excuse" leave no doubt as to the circumstances under which second-degree murder can be found to have been committed. In order to ensure proper application of Wyoming's second-degree murder statute, we must interpret the term "malice" as used in Wyo. Stat. Ann. § 6-2-104 to require something more than mere "hatred, ill will, or hostility" or the mere absence of "legal justification or excuse." In searching for an adequate definition of "malice," we need look no further than our existing precedent.

[¶27] Our decisions in *Lopez* and *O'Brien* implicitly approve of the definition of malice applied in the context of second-degree murder in Utah and Colorado, and under the Model Penal Code. Again, that formulation requires that, in order to demonstrate malicious intent, the State must show a heightened form of recklessness as compared to that required for manslaughter; i.e., the State must show that the defendant acted recklessly under circumstances manifesting an extreme indifference to the value of human life. We conclude that this standard is more closely equivalent to the moral culpability of the intent-to-kill mental requirement abandoned in *Crozier*, and that this formulation adequately distinguishes second-degree murder from manslaughter. Accordingly, we expressly adopt this definition of malice. The jury was not properly instructed regarding the element of malice and Mr. Wilkerson's conviction must be reversed. In the event of retrial on the same charge, the jury must be instructed that "malice" means that the act constituting the offense was done recklessly under circumstances manifesting an extreme indifference to the value of human life, *and* that the act was done without legal justification or excuse. To the extent this decision conflicts with our precedent concerning the definition of malice as used in Wyo. Stat. Ann. § 6-2-104, that precedent is hereby overturned.

19

**Sufficiency of the Evidence**

[¶28] Although we reverse Mr. Wilkerson's conviction on the basis that the jury was not properly instructed, we will briefly address Mr. Wilkerson's contention that there was insufficient evidence to support his conviction under the elements of the crime as instructed at trial. Generally, if the evidence was insufficient as a matter of law, Mr. Wilkerson is entitled to be acquitted and the State could not retry him. *Granzer v. State*, 2008 WY 118, ¶ 23, 193 P.3d 266, 272 (Wyo. 2008). In determining whether there was sufficient evidence to sustain a conviction, we apply the following standard of review:

> When reviewing the sufficiency of the evidence, this Court accepts as true the State's evidence and affords it those inferences which may be reasonably and fairly drawn from it. We do not consider conflicting evidence or inferences that can be drawn from such evidence. Our duty is to determine whether a quorum of reasonable and rational individuals would, or even could, have come to the same result as the jury actually did.

*Id.* (quoting *Kelly v. State*, 2007 WY 45, ¶ 11, 153 P.3d 926, 929 (Wyo. 2007)) (internal citations omitted).

[¶29] Relying on *Lopez*, Mr. Wilkerson claims that a single, closed-fist blow to the head is not sufficient to demonstrate that he acted "maliciously." We do not agree with Mr. Wilkerson's interpretation of our holding in *Lopez*. In *Lopez*, we stated that our precedent dictates that the defendant's "actions and motivations must be reviewed to determine his state of mind." *Id.*, ¶ 20, 86 P.3d at 858 (citing *Eagan v. State*, 58 Wyo. 167, 201-210, 128 P.2d 215, 227-230 (1942)). The present case is distinguishable from *Lopez* with respect to both actions and motivations. First, regarding the defendant's actions, we noted that Lopez had delivered "one open hand slap, not a blow or blows by a fist," and we concluded that "the only evidence of malice is the single open hand slap." *Id.*, ¶¶ 21, 24, 86 P.3d at 858-859. In contrast, in the present case, Mr. Wilkerson "blindsided" Mr. Newman with a closed-fist punch while Mr. Newman was seated on a barstool. After Mr. Newman was knocked to the ground, Mr. Wilkerson stomped or kicked in his direction and delivered a taunting statement. Second, with respect to the defendant's motivations, we noted in *Lopez* that Lopez and the decedent were friends, that Lopez had acted in "sudden anger," and that his anger "was caused by his concern that his friend would be harmed by drinking whiskey." *Id.*, ¶ 20, 86 P.3d at 858. In the present case, there was no evidence that Mr. Wilkerson's actions were motivated by a concern for Mr. Newman's well-being. There was sufficient evidence to support the conviction for second-degree murder under the definition of "malice" provided at trial.

20

[¶30]  Reversed and remanded for further proceedings consistent with this opinion.